**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

*FILED*

JUL 11 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | No. 02 C 2180 |
| ) | |
| v. ) | Hon. Wayne R. Andersen |
| ) | |
| DEAN L. BUNTROCK, PHILLIP B. ROONEY, ) | Magistrate Judge |
| JAMES E. KOENIG, THOMAS C. HAU, ) | Edward A. Bobrick **DOCKETED** |
| HERBERT A. GETZ, and BRUCE D. TOBECKSEN, ) | |
| ) | JUL 1 4 2003 |
| Defendants, ) | |
| ) | |

## NOTICE OF MOTION OF SECURITIES AND EXCHANGE COMMISSION FOR PROTECTIVE ORDER AND TO QUASH DEFENDANT BUNTROCK'S RULE 30(b)(6) NOTICE OF DEPOSITION OF THE COMMISSION

Plaintiff Securities and Exchange Commission ("Commission") respectfully moves this Court pursuant to Fed. R. Civ. P. 26, 30, 37, and Local Rules 26.2 and 37.2

(1) to issue a protective order pursuant to Fed. R. Civ. P. 26(c) concerning, and to quash, Defendant Dean L. Buntrock's Notice of Rule 30(b)(6) Deposition to the Commission, dated May 23, 2003 (the "Notice"); there is good cause for this motion, on grounds including, but not limited to,

    (a)    the Notice impermissibly and without justification seeks the deposition of opposing counsel; and

    (b)    the information sought is protected by work product, attorney-client, and other privileges, and, with respect to work product, defendant cannot satisfy his burden under Fed. R. Civ. P. 26(b)(3);

(2) to issue a protective order pursuant to Fed. R. Civ. P. 26(c), and to quash or limit the Notice pursuant to Fed. R. Civ. P. 26(b)(1) and (2), 26(g), and 30(b)(6), on additional grounds including, but not limited to, (a) the discovery sought is obtainable from less burdensome sources; (b) Defendant has not even attempted to obtain the discovery from other sources; (c) parts of the



Notice seek to circumvent prior rulings of the trial court in this and a related action; (d) the Notice seeks discovery of certain matters which are not relevant; (e) the Notice, as a discovery request, (i) is not warranted by existing law or a good faith argument for an extension, modification, or reversal of existing law, and (ii) was not interposed for a proper purpose, but to harass, cause unnecessary delay, or increase the cost of litigation; and (f) the Notice does not describe with reasonable particularity the matters on which examination is requested, but is overbroad and unduly burdensome; and

(3) such other and further relief as this Court may deem just and proper.

This motion is based upon this Notice of Motion, and the attached Certificate and Statement Pursuant to Local Rule 37.2, the accompanying Notice of Presentment, and the exhibit thereto, the accompanying Memorandum of Law in support thereof, the accompanying Declaration of Richard B. Skaff, and the exhibits thereto, and all pleadings, papers, and proceedings herein.

Dated: July 9, 2003

Respectfully submitted,

John D. Worland, Jr. (No. 90785340)
Richard B. Skaff (admitted pro hac vice)
Robert W. Pommer, III (No. 90785340)
Robert Kaplan (admitted pro hac vice)
Attorneys for Plaintiff
Securities and Exchange Commission
450 5th Street, N.W.
Washington, D.C. 20549-0911
Telephone (202) 942-4522 (Worland)
Fax (202) 942-9569 (Worland)

Local Counsel

John E. Birkenheier (No. 6270993)
Securities and Exchange Commission
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604
Telephone (312) 886-3947

## Certificate and Statement Pursuant to Local Rule 37.2

I, Richard B. Skaff, hereby certify that:

After consultation between the parties and good faith attempts to resolve their differences, the parties were unable to reach an accord on the dispute raised by the within motion. The parties exchanged three letters in an attempt to resolve this dispute: (i) letter of Richard B. Skaff, Esq., for the Commission, to Francis J. Higgins, Esq., for Defendant Buntrock, dated June 6, 2003, (ii) letter of Mr. Higgins to Mr. Skaff, dated June 11, 2003, and (iii) letter of Mr. Skaff to Mr. Higgins, dated June, 18, 2003. The parties also held two in person conferences in Chicago concerning this dispute: (i) on June 25, 2003 at approximately 5:00 p.m. between Mr. Higgins and John D. Worland, Jr. for the Commission, and (ii) on June 26, 2003 at approximately 8:45 a.m. among Messers. Worland, Skaff and Higgins. Pursuant to written Stipulation between the parties, the parties agreed to adjourn the July 7, 2003 date in the Notice to commence the deposition in order for the Commission to make this motion, and further stipulated to an agreed briefing and hearing schedule for the motion.

Dated: July 9, 2003

Richard B. Skaff (admitted pro hac vice)
One of the Attorneys for Plaintiff
Securities and Exchange Commission
450 5th Street, N.W.
Washington, D.C. 20549-0911
Telephone (202) 942-4548
Fax (202) 942-9668

## CERTIFICATE OF SERVICE

This is to certify that I have caused a copy of the Notice of Motion of Securities and Exchange Commission for Protective Order and to Quash Defendant Buntrock's Rule 30(b)(6) Deposition Notice to be served upon the persons listed below by Federal Express on this 9th day of July, 2003:

Francis J. Higgins, Esquire
Peter G. Rush, Esquire
Amy S. Dolgin, Esquire
Howard J. Rosenburg, Esquire
BELL, BOYD & Lloyd
Three First National Plaza
70 West Madison Street, Suite 3300
Chicago, Illinois 60602

**Attorneys for Defendant Dean L. Buntrock**

Nicholas J. Etten, Esquire
Lawrence M. Gavin, Esquire
BELL, BOYD & LLOYD
Three First National Plaza
70 West Madison Street, Suite 3300
Chicago, Illinois 60602

**Attorneys for Defendant Phillip B. Rooney**

Sarah R. Wolff, Esquire
Jonathan S. Quinn, Esquire
Matthew J. O'Hara, Esquire
Lisa Kellmeyer, Esquire
SACHNOFF & WEAVER, LTD.
30 South Wacker Drive, Suite 2900
Chicago, Illinois 60606

**Attorneys for Defendant James E. Koenig**

Kevin M. Forde, Esquire
Janice R. Forde, Esquire
Kevin R. Malloy, Esquire
KEVIN M. FORDE, LTD.
111 West Washington Street, Suite 1100
Chicago, IL 60602-2768

and

John Oberdorfer, Esquire
Patton, Boggs, LLP
2550 M Street, N.W.
Washington, D.C. 20037

**Attorneys for Defendant Thomas C. Hau**

William G. Sullivan, Esquire
Royal B. Martin, Jr., Esquire
MARTIN, BROWN & SULLIVAN, LTD
321 S. Plymouth Ct., 10th Floor
Chicago, IL 60604-3912

      and

Stuart L. Shapiro, Esquire
Michael C. Miller, Esquire
SHAPIRO FORMAN & ALLEN, LLP
380 Madison Avenue
New York, NY 10017

**Attorneys for Herbert A. Getz**

Phillip Leon Stern, Esquire
Chris C. Gair, Esquire
Kristi Lynn Nelson, Esquire
FREEMAN, FREEMAN & SALZMAN, P.C.
401 N. Michigan Ave., Suite 3200
Chicago, IL 60611

**Attorneys for Bruce D. Tobecksen**

Richard B. Skaff

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS **FILED**
EASTERN DIVISION

JUL 1 1 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 C 2180 |
| | ) | |
| v. | ) | Hon. Wayne R. Anderson **DOCKETED** |
| | ) | |
| DEAN L. BUNTROCK, PHILLIP B. ROONEY, | ) | Magistrate Judge  JUL 1 4 2003 |
| JAMES E. KOENIG, THOMAS C. HAU, | ) | Edward A. Bobrick |
| HERBERT A. GETZ, and BRUCE D. TOBECKSEN, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM
IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH
DEFENDANT BUNTROCK'S RULE 30(b)(6) DEPOSITION NOTICE**

Local Counsel

John E. Birkenheier (No.6270993)

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

175 West Jackson Boulevard
Chicago, Illinois 60604

John D. Worland, Jr. (No. 90785343)
Richard B. Skaff (admitted pro hac vice)
Robert W. Pommer, III (No. 90785340)
Robert Kaplan (admitted pro hac vice)

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

450 Fifth Street, N.W.
Washington, D.C. 20549-0911



# TABLE OF CONTENTS

Page

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

ARGUMENT

I.    BUNTROCK'S NOTICE IS CLEARLY AN ABUSE OF RULE 30(b)(6)
      FOR WHICH THERE IS GOOD CAUSE FOR A PROTECTIVE ORDER. . . .    6

II.   BUNTROCK'S 30(B)(6) NOTICE SEEKS AN IMPERMISSIBLE
      DEPOSITION OF OPPOSING COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

      A.    Buntrock Cannot Possibly Show That No Other Means Exist To
            Obtain The Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

      B.    Buntrock's 30(b)(6) Deposition Impermissibly Seeks To Discover
            Attorney Work Product and Information Protected by Other Privileges . . . 10

      C.    Parts Of The Notice Seek To Circumvent Prior Rulings By
            Judge Andersen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

III.  BUNTROCK'S 30(b)(6) NOTICE IS IN BREACH OF A WRITTEN
      DISCOVERY AGREEMENT AMONG THE PARTIES . . . . . . . . . . . . . . . . . .   13

IV.   THERE ARE OTHER BASES FOR FINDING GOOD CAUSE FOR A
      PROTECTIVE ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

      A.    Undue Burden on the Commission and the Court. . . . . . . . . . . . . . . . . .   14

      B.    Other Discovery Devices Are More Appropriate . . . . . . . . . . . . . . . . . .   14

CONCLUSION

## INTRODUCTION

Plaintiff Securities and Exchange Commission ("Commission") respectfully submits this memorandum in support of its motion for a protective order and to quash Defendant Buntrock's Notice of Rule 30(b)(6) Deposition to the Commission ("Notice"). Ex. 1.[1]

The "Notice" seeks a Rule 30(b)(6) deposition of the Commission concerning some twelve "matters," including, generally, (1) the preparation of, and analysis behind, the allegations in the Complaint; (2) all communications by the Commission staff with individual witnesses, and the role of three firms, Arthur Andersen, Williams & Connolly, and Ernst & Young, concerning Waste Management's 1997 internal review of its accounting practices and/or its 1998 Restatement of its financial statements; and (3) how the Commission conducted its investigation which led to the enforcement action in this case. For example, the "Notice" specifically seeks to have someone from the Commission testify about the activities of someone else - - such as the "role of Williams & Connolly" and "the of role of Ernst & Young" in the Company's internal "investigation of the Company's accounting practices undertaken in 1997 and the 1998 Restatement" (nos. 7 and 8) and "the role of Arthur Andersen in the 1998 Restatement" (no. 11) - - as well as testimony about the Commission's internal processes, such as the "nature and extent of the SEC's reliance on the work product of Niemeier and Herdman while in the private sector" (no. 10).

On its face, the "Notice" requires the Commission to produce for deposition "one or more officers or managing agents and/or other persons" knowledgeable as to these matters. There is no proper or good faith basis for a Rule 30(b)(6) deposition directed to the Commission on the "matters" set forth in the "Notice." Defendant Buntrock and the other Defendants well know that the investigation leading to this civil enforcement action was conducted by and at the direction of attorneys. The "Notice" is a clearly improper attempt to depose opposing counsel about its case and an impermissible invasion into work product and other privileges, as well as a transparent attempt to harass and unduly burden the Commission (and the Court) through the abusive use of this discovery device.

It is truly remarkable that the first and only deposition Buntrock - - or any other Defendant - - has noticed in the two months since deposition discovery began is not one directed at

---

[1] The documents and facts referred to throughout this memorandum are set forth in the Declaration of Richard B. Skaff ("Skaff Decl.") accompanying this motion. Exhibit ("Ex.") numbers cited in this memorandum reference exhibits attached to the Skaff Decl., and the abbreviations of the exhibit identifications used in this memorandum are those used in the Skaff Decl.

discovering the facts from a person with first-hand knowledge, but from the opposing party's counsel. If this approach were appropriate, the deposition process would be quite simple. Defendants would depose the Commission attorneys about its claims, and the Commission would depose each of the Defendants' attorneys about their defenses. Not surprisingly, Buntrock provided the Commission no authority to support the "Notice," and had no response to directly applicable case law issuing protective orders against such attorney depositions in the guise of 30(b)(6) notices - - particularly those directed at the Commission and other agencies whose purpose it is to investigate and prosecute.

Buntrock claimed that he was seeking to discover the "facts." But the "facts" of this case are in the documents the Commission acquired during its investigation, produced a year ago, and which for months now have been available in a searchable computer database. The "facts" are also with the witnesses, who are readily available for deposition; the Commission provided a list of them a year ago, as well as all investigative testimony transcripts and all exhibits to the testimony. The "facts" are even summarized as a result of various investigations, proceedings, and reports concerning the issues in this case. What remains is the attorneys' impressions and analysis, i.e., work product.

The time and resources of the parties and the Court should be devoted to developing evidence for trial, not harassment like this "Notice." Accordingly, a protective order should issue quashing Buntrock's improper "Notice."

### STATEMENT OF FACTS

A brief summary of certain of the facts pertinent to this motion is provided below.

**A.    The Action.** In a detailed, 138-page Complaint, the Commission alleged that Buntrock and other former senior corporate officers of Waste Management, Inc. ("Waste Management or "the Company") violated federal securities laws by defrauding the public for over five years by manipulating corporate earnings and inflating the Company's stock price, resulting in a $1.7 billion accounting restatement in 1998, the largest in history at that time. Defendants profited handsomely from their scheme through inflated "performance" bonuses and insider trading. Defendants' partner in this fraud was the auditing firm, Arthur Andersen.

**B.    Initial Disclosures by the Parties.** As part of its initial disclosures in June 2002 - - a year ago - - the Commission turned over the documents it received during its investigation (over

2

200 boxes), along with indexes to a substantial portion of the documents. The vast bulk of these documents were those received from Waste Management and Arthur Andersen. Since January, 2003, these materials have also been available in a searchable computer database. Many of these documents Defendants had even years before due to private litigation over the Waste Management financial statements. The Commission produced a 12-page list of witnesses with last known addresses and telephone numbers. The Commission also produced all of its investigative testimony (from 49 witnesses) and all exhibits to that testimony (844 in total) - - all now in the computer database. Also, the Commission provided a 7-page explanation of the elements and calculation of the disgorgement it was seeking from each Defendants. Ex. 6.

Defendants' joint initial disclosure was a 3-page document with two insurance policies attached. Ex. 7. Defendants did not produce a separate list of witnesses by name, and did not list the Commission (or persons at the Commission) as witnesses.

C.    **Deposition Procedures Agreed To By the Parties.**  In March, 2003, as memorialized in the Joint Scheduling Report (Ex. 8), the parties agreed to a procedure providing for an initial list of 20 witnesses by each side (plaintiff and defendants) with whom each would start depositions. As a side completed a deposition on its list, it could add another witness. The sides also agreed to exchange lists of five witnesses from their lists whom they would depose first. The list procedure applies to witnesses other than the individual Defendants, experts, and witnesses whose principal purpose was, for example, to authenticate documents. The Commission was <u>not</u> excluded from the list procedure. The parties exchanged the lists of 20 and the five "priority" witnesses in early April, 2003. (Exs. 10, 11)  The Defendants did <u>not</u> list the Commission, or any individual from the Commission, except for Roger Schwall of its Corporate Finance Division,[2] who was on their list of 20, but did not make it into the top five. The Commission is not identified in Defendant's Initial Disclosures, either.

D.    **Deposition Discovery to Date.**  By agreement, depositions could begin May 7, 2003. Since then, the Commission has taken videotaped depositions of three witnesses in Chicago for seven deposition days (May 19 and 20, and June 9, 10, 24, 25, 26) - - all from its list.

---

[2]      The Corporate Finance Division of the Commission helps to set standards for financial disclosure, and sometimes provides comments to companies with respect to certain filings with the Commission.

Completion of one of these depositions, and a fourth, are expected this month or in early August. Neither Buntrock nor any other Defendant has noticed a single deposition, except for Buntrock's 30(b)(6) "Notice" to the Commission.

**E.    Prior Investigations and Proceedings; Evidence Summaries Concerning the Waste Management Financial Statements.**   Issues concerning the financial statements of Waste Management have been the subject of prior investigations and proceedings. Documents and other information concerning these issues have been collected in summary form as a result. Buntrock has these summaries, and does not need the Commission attorneys' work product.

(1)    There were investigations which led to Waste Management's 1998 Restatement of its financial statements for 1992 through the first three quarters of 1997: (a) an eight-month internal review by Waste Management personnel, conducted by two separate management teams and involving the personal participation of several of the Defendants, (b) a review by a new team of auditors from Arthur Andersen, and (c) a review by the accounting firm of Ernst & Young and the law firm of Williams & Connolly, who were engaged by the Audit Committee of Waste Management. The Commission provided the documents it had from these reviews to Defendants.

(2)    There have been numerous litigations and arbitrations over the past six years. One such litigation was the shareholder class action filed in 1997 before Judge Andersen. In re Waste Mgt. Sec. Litig., 97 C 7709 (N.D. Ill.) Defendant Buntrock and three other Defendants were also defendants in the class action. Further, in one of several arbitrations, petitioners' accounting expert produced a detailed report concerning many of the accounting practices at issue here. Three Defendants in this action - - Koenig, Hau, and Rooney - - responded to that report. Hughes, et al. v. Waste Management Technologies, Inc., Case No. 30 489 00234 98 (AAA, Atlanta, Ga.)

(3)    In June 2001, the Commission filed an enforcement action and administrative proceedings against Arthur Andersen and certain of its partners in connection with their audits of the financial statements at issue here, detailing the fraudulent accounting practices.[3]

(4)    Prior to those proceedings, Arthur Andersen and its partners submitted Wells submissions, addressing the charges the Commission ultimately brought against them. The

---

[3]    See SEC v. Arthur Andersen LLP, et al., Litigation Release No. 17039, Release No. AE -1410, 2001 WL 687562, Case No. 1:01CV 01348 (JR) (D.D.C. June 19, 2001), and other proceedings at Release Nos. 34-44444 (June 19, 2001), 33-7986, 34-44445 (June 19, 2001), 33-7987, 34-44446 (June 19, 2001), 33-7988, 34-44447 (June 19, 2001), and 34-44448 (June 19, 2001).

Commission has produced these Wells submissions to the Defendants. ("Wells" is the name used to identify the Commission's pre-litigation process to give targets the opportunity to shape or limit any claims.)

**F.    Wells Submissions of Buntrock and the Other Defendants.**  The most extensive summary of all was done by Buntrock and the other Defendants. Prior to the Commission filing its enforcement action, the Commission staff provided each Defendant with a Wells notification and had multiple meetings and conversations in which the staff outlined the factual basis of its claims. In response, Buntrock and the other Defendants submitted to the Commission what may be the most voluminous Wells submissions ever - - over 500 pages of text and several hundred exhibits estimated to total approximately 10,000 pages. The Wells submissions collected and summarized an enormous amount of factual and documentary evidence organized around the accounting and disclosure issues which became the subject of this action, in an attempt to persuade the Commission not to bring this case. Included in the Joint Wells submission provided by Buntrock and three other Defendants was a report by their accounting experts, and other detailed papers responding to the accounting and disclosure issues in the case. Ex. 12.

**G.    Defendants' Withdrawal of Motions to Dismiss in Favor of Accounting Presentation to Judge Andersen.**  In June, 2002, Defendants filed six Rule 12(b)(6) motions to dismiss and eleven briefs, including Rule 9(b) particularity challenges, concerning the 138-page Complaint. The Commission filed a detailed 192-page brief in response. In March, 2003, faced with the Commission's response and the prospect of a ruling against them, Defendants requested that Judge Andersen hold a 2-day presentation on the accounting issues as part of a settlement process. Defendants withdrew their motions to dismiss, without prejudice to refiling.

**G.    Meet and Confer.**  The parties exchanged three letters - - two from the Commission, dated June 6 and 18, 2003 (Exs. 2 and 4), and one from Buntrock, dated June 11, 2003 (Ex. 3) - - and met in person twice in Chicago (on June 25 and 26) in an effort to resolve this matter, but were unable to do so.

## ARGUMENT

I.  **BUNTROCK'S NOTICE IS CLEARLY AN ABUSE OF RULE 30(b)(6) FOR WHICH THERE IS GOOD CAUSE FOR A PROTECTIVE ORDER.**

Courts have granted protective orders to preclude the unjustified and improper use of the Rule 30(b)(6) deposition process to have counsel testify themselves, or to have counsel "marshal" all of its factual proof and then feed it to a "witness" to testify about it in a deposition, as Buntrock seeks here. This is especially true where - - as here - - the 30(b)(6) notice is directed at a governmental agency that conducts investigations by attorneys and brings enforcement actions. E.g., SEC v. Rosenfeld, 1997 U.S. Dist. LEXIS 13996 *3-10 (S.D. N.Y. Sept. 12, 1997) (granting protective order in Commission enforcement action against 30(b)(6) deposition of the Commission); EEOC. v. HBE Corp., 157 F.R.D. 465, 466-67 (E.D. Mo. 1994) (granting motion for a protective order against 30(b)(6) deposition of EEOC for a person having knowledge of the allegations in the complaint); In re Independent Service Organizations Antitrust Litigation, 168 F.R.D. 651, 654-66 (D. Kan. 1996) (granting motion for a protective order requesting corporate defendant to produce a witness to testify about the facts supporting numerous paragraphs of denials and affirmative defenses in answer and counterclaims); SEC v. Morelli, 143 F.R.D. 42, 44, 47 (S.D.N.Y. 1992) (granting protective order in Commission enforcement action against 30(b)(6) deposition of the Commission seeking facts and contentions underlying allegations of the complaint). See United States v. District Council of New York City, 1992 U.S. Dist. LEXIS 12307 *15-51 (Aug. 14, 1992) (denying motion to compel answers to questions by FBI agent designee in Rule 30(b)(6) deposition seeking, among other things, "the facts and circumstances surrounding the allegations in the Complaint").

SEC v. Rosenfeld is particularly apt here. Like Buntrock, instead of conducting deposition and other discovery, Rosenfeld served the Commission with a notice for Rule 30(b)(6) deposition specifying 18 matters for examination, concerning the facts underlying the complaint, the Commission's contentions concerning claims, and its communications with witnesses. The Court issued a protective order against this abuse of Rule 30(b)(6), following well established principles, including that (1) it constitutes an improper deposition of opposing counsel, id. at *5; (2) there was no demonstration that the information sought was not available by other means, id. at *9; (3) it was an improper invasion of work product and other privileges, id. at *6-9; (4) other discovery

6

devices were more appropriate, id. at *9; and (5) the 30(b)(6) deposition would be an undue burden on both the Commission and the Court, which would be entangled in endless disputes concerning privilege, id. Accord, e.g., SEC v. Morelli, 143 F.R.D. at 46-48.

The above cases and their reasoning have been expressly endorsed in this District in Smithkline Beecham Corp. v. Apotex Corp., 2000 U.S. Dist. LEXIS 667 at *26-32 (N.D. Ill. Jan. 21, 2000). "Rule 30(b)(6) is a vehicle for streamlining the discovery process," Smithkline, 2000 U.S. Dist. LEXIS 667 at *24, not making it more unruly and abusive. The Court refused to compel a Rule 30(b)(6) in such areas as plaintiff's "responses to Defendants' Interrogatories and requests for production, along with the subjects identified therein" (id. at *26), stating that

> [T]he [Federal] Rules also preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden. See United States v. District Council of New York City, 1992 U.S. Dist. LEXIS 12307, 1992 WL 208284 at * 15 (S.D.N.Y. Aug. 19, 1992). Consequently, the recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense or claim. See In re Independent Svc. Org. Antitrust Litig., 168 F.R.D. at 654. This rule holds especially true when the information sought is likely discoverable from other sources. See E.E.O.C. v. HBE Corp., 157 F.R.D. 465, 466 (E.D. Mo. 1994). . . . [C]ourts will not permit discovery implicating privilege concerns absent a showing that the information sought is not discoverable by other means. See HBE Corp., 157 F.R.D. at 466-67. 2000 U.S. Dist. LEXIS 667 at *27-28.

Apart from the problems associated with disfavored depositions of opposing counsel and privilege, the use of this discovery device, especially in a case such as this one, simply does not make good sense. Take just the first matter in Buntrock's "Notice." He wants to depose individuals on "each and every false or misleading statement or [sic] contained in annual and quarterly reports, press releases or other public statements of Waste Management," over a five year period. The 138-page Complaint in this case alleges, in detail, volumes of misstatements in some five annual reports, 16 quarterly reports, and numerous press releases over this period. All such first-hand knowledge rests with the persons involved at the time the misstatements took place. Seeking to have the Commission's counsel summarize what these fact witnesses will say is pointless. How could serving a notice with such a request be anything other than unduly burdensome and harassment?

7

## II. BUNTROCK'S 30(b)(6) NOTICE SEEKS AN IMPERMISSIBLE DEPOSITION OF OPPOSING COUNSEL.

Buntrock claims that he is "not seeking to depose the Commission's attorneys, let alone to discover their work product." June 11 Letter, Ex. 3, p.1. The Court in <u>Rosenfeld</u> rejected the same argument as "disingenuous[]," stating that the action was "an SEC enforcement proceeding" resulting from an investigation, and that

> <u>because such investigations are conducted by the SEC's legal staff</u>, a Rule 30(b)(6) deposition of an SEC official with knowledge of the extent of that investigative effort, <u>amounts to the equivalent of an attempt to depose the attorney for the other side</u>." 1997 U.S. Dist. LEXIS 13996 at * 5 (emphasis added).

Further, it makes no difference that certain of the individuals (such as staff accountants) working on the investigation may not have been attorneys, because they were working <u>at or under the direction of attorneys</u>:

> if forced to designate witnesses to testify fully and completely concerning the matters described in the notice of deposition, testimony of SEC attorneys or examiners working <u>under the direction of the SEC attorneys conducting the investigation</u> would be necessary. <u>Id.</u> at *5-6 (emphasis added).

As this Court has stated, "[d]eposing an opponent's attorney is a drastic measure and is viewed with a jaundiced eye and is infrequently proper." <u>Oil Express National, Inc. v. D'Alessandro</u>, 1997 U.S. Dist. LEXIS 7317 (N.D. Ill. May 15, 1997) (Bobrick, M.J.) (granting motion for protective order as to deposition of opposing counsel). Accordingly, the burden on a protective order motion involving discovery from opposing counsel shifts to the party seeking such a disfavored procedure, who must demonstrate

> (1) <u>no other means</u> exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and <u>nonprivileged</u>; and (3) the information is crucial to the preparation of the case.

<u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323, 1327 (8th Cir. 1986) (citations omitted; emphasis added). Accord, e.g., <u>M&R Amusement Corp. v. Blair</u>, 142 F.R.D. 305-06 (N.D.Ill. 1992) (denying motion to depose insured's counsel, <u>citing Shelton</u>), <u>cited in Oil Express, supra</u>; <u>Harriston v. Chicago Tribune Co.</u>, 134 F.R.D. 232, 233 (N.D. Ill. 1990) (<u>citing Shelton</u>); <u>EEOC</u>, 157 F.R.D. at 466 (granting protective order against 30(b)(6) deposition, <u>citing Shelton</u>); <u>SEC v.</u>

Morelli, 143 F.R.D. at 47 (granting protective order against 30(b)(6) deposition; "'[b]ecause deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a . . . protective order . . .'") (citation omitted); District Counsel, 1992 U.S. Dist. LEXIS 12307 at *14-16 (denying motion to compel 30(b)(6) deposition, citing Shelton). See SEC v. World-Wide Coin Investments, Ltd., 92 F.R.D. 65, 67 (N.D. Ga. 1981) (denying motion to compel depositions of Commission trial counsel and investigator).

Buntrock cannot satisfy these standards.

## A.     Buntrock Cannot Possibly Show That No Other Means Exist To Obtain the Information.

Buntrock cannot possibly show that no other means exist to obtain the information. He claims that he seeks Commission "witnesses who can testify on its behalf to the relevant facts." June 11 Letter, Ex. 3, p. 1. Those "facts" are in the relevant documents and with witnesses who have first-hand knowledge - - which he already has or who are readily available for deposition.

As explained above, in its Initial Disclosures, the Commission provided a detailed roadmap of its investigation. Further, as described above, due to numerous prior investigations and litigations, various short-cuts through the facts exist. These include summaries dealing with the accounting issues and investigation which lead to the Restatement, and the entities involved in those matters (Arthur Andersen, Ernst & Young, and Williams & Connolly), which are the subject of many of the matters in his "Notice." Not that Buntrock needs any such help. One of the most extensive summaries of the facts and accounting issues is found in the voluminous Wells submissions of Buntrock and the other Defendants (see Ex. 12), including detailed reports by his accounting experts, which were provided by the Defendants after the staff had outlined in meetings and conversations to them the factual basis for its claims before this action was filed.

Indeed, it is completely specious for Buntrock to claim that he needs "depositions" of his opposing counsel to learn the GAAP provisions violated or other supposed "facts" concerning the accounting issues. July 11 Letter, Ex. 3, p.1. Whether facts or contentions, he has demonstrated that he well knows the matters related to the accounting claims by his detailed Wells submissions and the reports of his accounting experts addressing them. Particularly telling is the fact that

9

Buntrock and the other Defendants withdrew their motions to dismiss, and requested that Judge Andersen hold a two-day presentation from Defendants and the Commission on the accounting issues as part of a settlement process. Defendants were anxious to have their experts make the presentation last May - - well before Buntrock's 30(b)(6) Notice. It is unthinkable that Defendants would have requested this proceeding on the accounting issues before the trial judge in this case if they did not understand the issues, or were not well prepared factually to defend them.[4]

Accordingly, Buntrock could not begin to show that no other means exist to obtain the information. E.g., SEC v. Rosenfeld, 1997 U.S. Dist. LEXIS 13996 at * 9 (defendant had not "tak[en] the necessary oral discovery from the witnesses with knowledge of the facts alleged in the complaint"); Independent Service, 168 F.R.D. at 654 (party noticing 30(b)(6) deposition "failed to convince the court that the factual information it seeks cannot be discovered by other less problematic means, or that it is not already available in the voluminous discovery previously conducted in this and the R&D case"); EEOC, 157 F.R.D. at 465 (where EEOC had turned over its investigative file and identified witnesses, "defendant ha[d] not attempted to argue that the facts forming the basis of the plaintiff's allegations are not discoverable by other means"). Smithkline, 2000 U.S. Dist. LEXIS 667 at *29. See also Fed. R. Civ. P. 26(b)(3).

**B.      Buntrock's 30(b)(6) Deposition Impermissibly Seeks To Discover Attorney Work Product and Information Protected by Other Privileges.**

Where a 30(b)(6) notice seeks supposed "facts," contentions, and the roles of defendants and others - - particularly from civil or criminal prosecutorial agencies where investigations by attorneys have led to actions or charges - - courts have held that such depositions are improper because they impermissibly seek attorney work product. Indeed, where, as here, the agency has turned over its documents and the names of witnesses, courts have found that there is really no other conclusion to draw as to the intent of the 30(b)(6) notice.

As the Court stated in SEC v. Rosenfeld, rather than "using interrogatories" or "Requests to Produce Documents" and "then taking the necessary oral discovery from the witnesses,"

---

[4]      Further, Judge Andersen structured the discovery schedule so that Defendants would not only receive the Commission's accounting and other expert reports first, but depositions of the Commission's experts before Defendants would even have to produce a report. Ex. 9.

Rosenfeld seeks to explore the extent of the SEC's knowledge (how much it knows and how much it does not know) as a result of the investigative effort of its attorneys. This Rule 30(b)(6) discovery is obviously aimed at finding the nature of the SEC's attorney work product, and is denied for that reason. 1997 U.S. Dist. LEXIS 13996 at * 9.

In rejecting Rosenfeld's claim (like Buntrock's here) that, among other things, "he is entitled to cross-examine the SEC as to its position on which statements are false and why; what is fraudulent in the annual report and why it is fraudulent; and which sentences in the annual report contain the alleged misrepresentations" (id. at 6-7), the Court stated

These arguments highlight the fact that defendant is attempting to investigate the attorneys' work product and the attorney's authority to conduct this litigation. Both objectives are inappropriate. Id. at *7.

Accord, e.g., EEOC, 157 F.R.D. at 466 ("The defendant asserts that it is seeking to 'explore the factual bases of the claims made by Plaintiff. As defendant well knows, it is the selection and compilation of the relevant facts that is at the heart of the work product doctrine.") (emphasis added); SEC v. Morelli, 143 F.R.D. at 47 ("the Court finds that the proposed Rule 30(b)(6) deposition constitutes an impermissible attempt by defendant to inquire into the mental processes and strategies of the SEC;" the Court is "drawn inexorably to the conclusion that [30(b)(6) notice] is intended to ascertain how the SEC intends to marshal the facts, documents and testimony in its possession, and to discover the inferences that plaintiff believes properly can be drawn from the evidence it has accumulated") (emphasis added); Dist. Council, 1992 U.S. Dist. LEXIS 12307 at *34. See Independent Service, 168 F.R.D. at 654.

Moreover, it makes no difference whether the witness is the attorney or someone who assisted the attorney in the investigation, or a stranger to the investigation who the attorney educates with the facts in order to testify. As the Court in Rosenfeld stated:

The witness designated would have to have been prepared by those who conducted the investigation, and since the investigation was conducted by the SEC attorneys, preparation of the witnesses would include disclosure of the SEC attorneys' legal and factual theories as regards the alleged violations of the security laws of this country and their opinions as to the significance of documents, credibility of witnesses, and other matters constituting attorney work product. 1997 U.S. Dist. LEXIS 13996 at * 9.

Accord, e.g., Dist. Council, 1992 U.S. Dist. LEXIS 12307 at *34, 37 (Rule 30(b)(6) deposition of F.B.I. agent raises "work product concerns;" since what agent knows "has either been told to her

11

by plaintiff's counsel, or learned on direction of counsel . . . her selective revelation of information will no doubt indicate particular documents or witnesses to which she and her supervising attorneys attach the greatest significance; it will also reveal how they are preparing to prove and try their case").[5]

### C.  Parts Of The Notice Seek To Circumvent Prior Rulings By Judge Andersen.

Buntrock apparently seeks to circumvent two rulings of Judge Andersen by taking testimony on matters 9 and 10 of the Notice:

9.  The role, actions, or communication of Charles Niemeier and Robert Herdman while employees or officers of the SEC in any way related to the investigations of the defendants and the initiation of this enforcement action, including any measures taken to prevent Niemeir and Herdman from in any way influencing the investigation and decision to initiate a civil enforcement action.

10.  The nature and extent of the SEC's reliance on the work product of Niemeier and Herdman while in the private sector and as employees or officers of the SEC.

These matters are directed not at the merits, but at the propriety of the investigation and decision processes which led to bringing this enforcement action.

Buntrock sought to engage in the same baseless fishing expedition into these areas through discovery requests in <u>Buntrock v. SEC</u>, No. 02 C 1274 (N.D. Ill. 2002). Judge Andersen stayed discovery pending the Commission's motion to dismiss (Ex. 13), and then dismissed the action for lack of subject matter jurisdiction. 2003 U.S. Dist. LEXIS 1693 (N.D. Ill. Jan. 29, 2003).

In the present action, Buntrock and the other Defendants moved to dismiss for lack of subject matter jurisdiction, challenging the manner in which this action was approved by duty officer, and raising various other supposed improprieties in their briefs along the way. Defendants raised the issue of holding an evidentiary hearing, and Judge Andersen requested that the parties brief the issue. Judge Andersen denied the motion to dismiss, and did not hold an evidentiary hearing. 2002 U.S. Dist. LEXIS 22954 (N.D. Ill. Nov. 21, 2002). The Commission's decisional

---

[5]  The inquiries called for by Buntrock's Notice also appear to intrude into other privileges as well, such as the law enforcement, deliberative process, and attorney-client privileges. <u>See, e.g.</u>, <u>SEC v. Rosenfeld</u>, 1997 U.S. Dist. LEXIS 13996 at * 8 (law enforcement privilege). This is especially so with subject matters 9 and 10 in the Notice, which are objectionable attempts at discovering, in addition to work product, the decision-making processes and investigative techniques at the Commission.

processes are entitled to a presumption of regularity, and a litigant cannot conduct expeditionary discovery in the hopes of creating a challenge. "[I]n the absence of clear evidence to the contrary, it must be assumed that the Commission adhered to its own rules and exercised its discretion as Congress intended." Id. at *11-12.[6]

Judge Andersen also made it quite clear that "the SEC has made serious allegations in this case," and that "the focus of this Court and this lawsuit" should be to address these allegations "on the merits," not through further groundless diversions into Commission processes. Id. at *12. Indeed, the use of this improper 30(b)(6) Notice to seek an attorney summary of the facts - - rather than conducting discovery on the merits - - is the exact antithesis of Judge Andersen's directive.[7]

## III. BUNTROCK'S 30(b)(6) NOTICE IS IN BREACH OF A WRITTEN DISCOVERY AGREEMENT AMONG THE PARTIES.

After months of negotiations, the parties reached an agreement on certain procedures memorialized in the Joint Scheduling Report (Ex. 8, pp. 5-6) - - signed by all the parties and filed with the Court - - "to make the deposition process fair and orderly." Each side provided "to the other a list of at most 20 witnesses it wishes to notice for deposition." As "a side completes a deposition, that side may add another deponent to its list, whom it may then notice":

---

[6]     As the court stated in Braniff Airways, Inc. v. Civil Aeronautics Bd., 379 F.2d 453, 462 (D.C. Cir. 1967), there is no "license to rummage through the internal processes of an administrative agency, searching for some irregularity, or the hint of one, on which to base a challenge to the validity of the decision." The Court explained that: "The general rule remains that a party is not entitled to probe the deliberations of administrative officials, oversee their relationships with their assistants, or screen the internal documents and communications they utilize. 'Just as a judge cannot be subjected to such a scrutiny * * * so the integrity of the administrative process must be equally respected.' United States v. Morgan, 313 U.S. 409, 422, 61 S. Ct. 999, 1004 (1941)."

[7]     Further, matters 9 and 10 are simply not relevant. These matters would not satisfy the standard of relevance prior to the 2000 amendments to the Federal Rules, let alone the more restrictive standard in current Rule 26(b)(1). To be relevant now, discovery must be relevant to "the claim or defense of any party." The claims in this action concern violations of the securities laws. No defenses have even been asserted. See Beauchem v. Rockford Products Corp., 2002 U.S. Dist. LEXIS 1044 at *2-3 (N.D. Ill. Jan. 24, 2002) (Mahoney, J.); Advisory Committee Notes to the 2000 Amendments to Rule 26(b)(1) ("The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. . . .The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.") (Emphasis added.)

13

> These procedures will apply to witnesses <u>other than</u> the individual <u>Defendants, experts, and witnesses whose principal purpose is to produce documents, authenticate documents, or to provide a foundation for the identification of business records.</u>

The Commission is <u>not</u> excluded from these procedures.

Buntrock did not list the Commission, or any person at the Commission, on his list of 20 witnesses - - except Roger Schwall, a member of the Division of Corporate Finance, as explained above. The Commission offered to schedule Mr. Schwall's deposition to resolve the dispute. June 18 Letter, Ex. 4, p. 3. Buntrock refused.

Having agreed to these procedures, Buntrock must proceed with depositions of the persons on the list of 20, or persons excluded by the agreement from the list of 20. The Commission is not excluded from these agreed procedures. The "Notice" should be quashed in its entirety for violating the agreement.

## IV. THERE ARE OTHER BASES FOR FINDING GOOD CAUSE FOR A PROTECTIVE ORDER.

**A. Undue Burden on the Commission and the Court.** The Court in <u>Rosenfeld</u> found that the Rule 30(b)(6) deposition would place an undue burden not only on the SEC, but also on the Court, "which would have to make a multitude of otherwise unnecessary decisions about issues of attorney work product and law enforcement privilege." 1997 U.S. Dist LEXIS 13996 at *10. <u>Accord, e.g.</u>, <u>Independent Service Organization</u>, 168 F.R.D. at 654; <u>District Council</u>, 1992 U.S. Dist. LEXIS 12307 at * 46 ("However liberal the discovery rules are, they could not reasonably be construed as requiring a party in a case such as this to make a Rule 30(b)(6) deponent . . . the repository of all information known to counsel so that she could then provide it to an adversary."). <u>Smithkline</u>, 2000 U.S. Dist. LEXIS 667 at * 29.

**B. Other Discovery Devices Are More Appropriate.** Defendants can conduct depositions of the real fact witnesses in the case. <u>SEC v. Rosenfeld</u>, 1997 U.S. Dist. LEXIS 13996 at *9. Further, the cases cited above have recognized that a 30(b)(6) deposition is not the appropriate discovery device to ascertain a party's contentions. <u>Rosenfeld</u>, <u>id.</u> at *9 (defendant did not provide any reasons why he could not use "claim contention interrogatories at the close or towards the close of factual discovery"); <u>District Council</u>, 1992 U.S. Dist. LEXIS 12307 at * 48-

14

49; <u>Smithkline</u>, 2000 U.S. Dist. LEXIS 667 at * 28-29.[8]

## CONCLUSION

For the reasons set forth above, this Court should grant the protective order and quash

Buntrock's improper 30(b)(6) Notice.

Dated: July 9, 2003

Respectfully submitted,

John D. Worland, Jr. (No. 90785349)
Richard B. Skaff (admitted pro hac vice)
Robert W. Pommer, III (No. 90785340)
Robert Kaplan (admitted pro hac vice)
Attorneys for Plaintiff
Securities and Exchange Commission
450 5th Street, N.W.
Washington, D.C. 20549-0911
Telephone (202) 942-4522 (Worland)
Fax (202) 942-9569 (Worland)

Local Counsel

John E. Birkenheier (No. 6270993)
Securities and Exchange Commission
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604
Telephone (312) 886-3947

---

[8] For the reasons set forth in this memorandum, and in the notice of motion, the relief requested is justified under Fed. R. Civ. P. 26(b)(2) and 26(g) as well.

## CERTIFICATE OF SERVICE

This is to certify that I have caused a copy of the Securities and Exchange Commission's Memorandum in Support of Motion for Protective Order and To Quash Defendant Buntrock's Rule 30(b)(6) Deposition Notice to be served upon the persons listed below by Federal Express on this 9th day of July, 2003:

Francis J. Higgins, Esquire
Peter G. Rush, Esquire
Amy S. Dolgin, Esquire
Howard J. Rosenburg, Esquire
BELL, BOYD & Lloyd
Three First National Plaza
70 West Madison Street, Suite 3300
Chicago, Illinois 60602

**Attorneys for Defendant Dean L. Buntrock**

Nicholas J. Etten, Esquire
Lawrence M. Gavin, Esquire
BELL, BOYD & LLOYD
Three First National Plaza
70 West Madison Street, Suite 3300
Chicago, Illinois 60602

**Attorneys for Defendant Phillip B. Rooney**

Sarah R. Wolff, Esquire
Jonathan S. Quinn, Esquire
Matthew J. O'Hara, Esquire
Lisa Kellmeyer, Esquire
SACHNOFF & WEAVER, LTD.
30 South Wacker Drive, Suite 2900
Chicago, Illinois 60606

**Attorneys for Defendant James E. Koenig**

Kevin M. Forde, Esquire
Janice R. Forde, Esquire
Kevin R. Malloy, Esquire
KEVIN M. FORDE, LTD.
111 West Washington Street, Suite 1100
Chicago, IL 60602-2768

and

John Oberdorfer, Esquire
Patton, Boggs, LLP
2550 M Street, N.W.
Washington, D.C. 20037

**Attorneys for Defendant Thomas C. Hau**

William G. Sullivan, Esquire
Royal B. Martin, Jr., Esquire
MARTIN, BROWN & SULLIVAN, LTD
321 S. Plymouth Ct., 10th Floor
Chicago, IL 60604-3912

and

Stuart L. Shapiro, Esquire
Michael C. Miller, Esquire
SHAPIRO FORMAN & ALLEN, LLP
380 Madison Avenue
New York, NY 10017

**Attorneys for Herbert A. Getz**

Phillip Leon Stern, Esquire
Chris C. Gair, Esquire
Kristi Lynn Nelson, Esquire
FREEMAN, FREEMAN & SALZMAN, P.C.
401 N. Michigan Ave., Suite 3200
Chicago, IL 60611

**Attorneys for Bruce D. Tobecksen**

Richard B. Skaff