# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 C 2180 | **DATE** | 5/25/2004 |
| **CASE TITLE** | | S.E.C. vs. Buntrock et al | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, the numerous motions to dismiss filed by all of the defendants [126-1] are all denied. Defendants are ordered to answer the complaint on or before June 18, 2004.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | MAY 2 5 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | *DMD* | | *139* |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |

U.S. DISTRICT COURT
CLERK
2004 MAY 25 PM 3:17

courtroom deputy's initials

TSA

Date/time received in central Clerk's Office

date mailed notice

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

MAY 2 5 2004

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 2180 |
| DEAN L. BUNTROCK, PHILLIP B. ROONEY, JAMES E. KOENIG, THOMAS C. HAU, HERBERT A. GETZ, and BRUCE D. TOBECKSEN, | ) ) ) ) ) | Wayne R. Andersen District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The American free enterprise system is dependent upon the honest reporting of financial data by corporations whose shares are publicly traded. The men and women who operate these corporations receive enormous financial rewards. Their compensation is protected, even encouraged, by the free political, legal and economic systems of this nation; but a condition of this protection is the simple requirement that corporate leaders be honest in making the financial reports upon which investors depend. The Securities and Exchange Commission has the duty to enforce this requirement.

In this lawsuit, the Securities and Exchange Commission contends that each of the named defendants, Dean Buntrock, Philip Rooney, James Koenig, Thomas Hau, Herbert Getz and Bruce Tobecksen, deliberately violated his obligation of honesty to the investing public and, therefore, asks this Court, *inter alia*, to compel the defendants to disgorge the financial reward that each defendant received from what the SEC contends was dishonest reporting of financial data. All

*139*

the defendants have moved to dismiss the complaint. Because we must assume the truth of the factual allegations contained in the SEC's complaint, it is premature for us to dismiss either the claims or the nature of the relief sought by the SEC. Therefore, the motions to dismiss are denied for the following specific reasons.

## BACKGROUND

On March 26, 2002, the Securities and Exchange Commission ("SEC" or "the Commission") instituted this civil action against the six named defendants, who served as officers of Waste Management, Inc. ("Waste Management"). The complaint alleges that the defendants falsified Waste Management's earnings and other measures of financial performance. It further claims that the defendants improperly eliminated or deferred current period expenses in order to inflate earnings, including specifically operating earnings, and that they used one-time gains realized on the sale or exchange of assets to eliminate unrelated current period operating expenses. The Commission asserts that these acts violated section 17(a) of the Securities Act of 1933 ("Securities Act"), sections 10(b) and 13(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as well as Exchange Act rules 10b-5, 12b-20, 13a-1 and 13a-13.

In February 1998, Waste Management acknowledged past accounting errors and announced that it would restate its financial statements for the period 1992 through the first three-quarters of 1997 (the "Restatement"). The Restatement acknowledged that Waste Management had overstated its net after-tax income by over $1 billion. The Commission claims that the overstatement of earnings resulted in a shareholder decline of $6 billion in market value when the stock price plummeted from $35 to $22 per share. The defendants allegedly received bonuses and retirement benefits and avoided stock trading losses in connection with the inflated

2

earnings. These benefits allegedly range from $403,779 for Mr. Tobecksen to $16,917,761 for Mr. Buntrock.

The Commission is seeking both disgorgement of any ill-gotten gains and civil monetary penalties. It requests that each of the defendants pay penalties pursuant to section 20(d) of the Securities Act and section 21(d)(3) of the Exchange Act. The Commission further requests, pursuant to section 21A of the Exchange Act, that defendants Buntrock and Rooney pay penalties in the amount of three times any illegal trading profits gained or losses avoided.

The defendants have filed a flurry of motions attacking the SEC's 138-page complaint. Some of these motions were filed on behalf of all the defendants while others were filed on behalf of only one defendant or a small subset of defendants. The motions are fully briefed, and the parties submitted supplemental briefs in December 2003. These motions are now ripe for decision.

## DISCUSSION

In ruling on a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). We will address each of the motions to dismiss in turn.

## I.    Motion to Strike Claims for Disgorgement

In this motion, all the defendants assert that the securities laws, as well as recent United States Supreme Court precedent, do not permit the SEC to seek disgorgement as a form of relief in this case. Furthermore, the defendants argue that the SEC has not adequately pled a causal connection between the property to be disgorged and the alleged securities law violations. We disagree.

As primary support for their argument that the federal securities laws do not permit disgorgement as a form of relief, the defendants cite the recent Supreme Court decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708 (2002). In this case, the Supreme Court addressed the issue of what constituted "appropriate equitable relief" for claims brought pursuant to the Employee Retirement Income Security Act ("ERISA"). The petitioners in *Great-West* were an employee benefit plan and its insurance carrier. They filed a lawsuit seeking specific performance of a reimbursement provision contained in the respondents' benefit plan. The Court held that Section 502(a)(3) of ERISA, which permits actions seeking "appropriate equitable relief," did not authorize an action for specific performance in that case because the remedy sought was essentially legal in nature. *Id.* at 214. The key to the Court's holding was a discussion regarding the legal and equitable nature of the restitution remedy. If the remedy sought under Section 502(a)(3) of ERISA was one that was traditionally available in equity, then it was permissible. *Id.* However, if the remedy sought was essentially legal in nature, then it fell outside the scope of Section 502(a)(3). *Id.* at 214-16.

Given this analytical framework, we agree with the SEC that the disgorgement remedy it seeks is equitable in nature and, therefore, an acceptable form of relief. As the SEC has

accurately stated, disgorgement has historically been viewed as an equitable remedy employed against those who profit by abusing positions of trust. In essence, it deprives a wrong-doer of ill-gotten gains. Compensation is not an element of the claim. In fact, the Supreme Court has held, in the ERISA context, that disgorgement is a viable equitable remedy to recover improperly received profits. *See Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250-51, 120 S. Ct. 2180 (2000); *Mertens v. Hewitt Associates*, 508 U.S. 248, 260, 113 S. Ct. 2063 (1993). Furthermore, virtually every federal court of appeals has recognized disgorgement as an appropriate equitable remedy under the securities laws. *See, e.g., SEC v. Lipson*, 278 F.3d 656, 662-63 (7th Cir. 2002); *SEC v. Infinity Group Co.*, 212 F.3d 180 (3d Cir. 2000); *SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993); *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90 (2d Cir. 1978). We view these decisions as consistent with the Supreme Court's holding in *Great-West*.

Therefore, we conclude that the disgorgement remedy is equitable in nature and, thus, is within the arsenal of weapons available to the SEC when prosecuting enforcement actions. This conclusion is based not only the applicable federal precedent but also on our understanding of Congress' intent in creating this enforcement regime. Further, to the extent that the defendants challenge the SEC's "pleading" of the disgorgement remedy, that challenge is rejected as untimely because none of the defendants have yet been found liable for any securities violation. Accordingly, the motion to strike the claims for disgorgement is denied.

II.     **Motion To Dismiss For Failure to Satisfy Rule 9(b)**

Next, a host of defendants have moved to dismiss the SEC's complaint for failure to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

Additionally, individual defendant Tobecksen has filed a separate motion to dismiss pursuant to Rule 9(b). These motions are denied.

Rule 9(b) requires plaintiffs to plead "the circumstances constituting fraud . . . with particularity." *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). This means the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The stringent pleading requirement under Rule 9(b) serves three main purposes: "to protect defendants' reputations, to prevent fishing expeditions, and to provide adequate notice to defendants of the claims against them." *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 815, 819 (N.D. Ill. 2000).

Resolution of these motions is a relatively straightforward and easy task. The SEC's complaint in this case is voluminous. It is 138 pages long and contains 357 numbered paragraphs. It alleges a coherent and compelling story of fraud and abuse by the highest members of Waste Management's corporate leadership. The SEC has identified very clearly the roles that it contends each of the individual defendants played in the accounting improprieties that lead to the 1998 Restatement, as well as the earlier understatement of expenses which lead to improperly inflated corporate earnings. In fact, there are forty paragraphs reserved specifically to describe each defendant's participation in the alleged fraud. (Complt. at ¶¶ 297-336.) The complaint also clearly describes where, when and how the defendants acted to further the alleged securities fraud. Moreover, we are satisfied that the complaint meets the heightened pleading requirements of Rule 9(b) in that it clearly identifies specific financial statement misrepresentations, it states which principles of GAAP the defendants violated in effecting the alleged fraud (e.g., FAS 121), and it puts the defendants on notice as to which Waste

6

Management landfills were improperly amortized (e.g., the Live Oak landfill). In fact, if the SEC's complaint did not satisfy the particularity standard of Rule 9(b), we would be hard pressed to find any complaint that could.

With respect to Tobecksen's separately filed motion to dismiss, it is also denied. In his motion, Tobecksen argues that a "mistake" is insufficient to support a securities fraud claim and that the SEC has failed to allege with particularity the effect of the accounting mistake. As to his first contention, Tobecksen is correct that a simple accounting error cannot justify a fraud charge. However, a defendant's awareness of the mistake in addition to his active perpetuation of the error over a period of years resulting in a multi-million dollar inflation of earnings certainly can support an allegation of securities fraud. Specifically, the SEC has asserted that the net result of Mr. Tobecksen's garbage truck depreciation "mistake," if it can truly be considered a mistake, was an overstatement of Waste Management's earnings by approximately $100 million. (Complt. at ¶¶ 10, 48, 169, 170, 256, 334.)

Our review of the SEC's complaint with respect to Tobecksen, as well as for each of the other defendants, is that the SEC has presented a vivid picture of alleged financial and accounting wrongdoing over the course of numerous years that more than adequately puts the defendants on notice of the nature of the securities fraud claims they must now defend. Therefore, the motions to dismiss pursuant to Rule 9(b) are denied.

## III. Motion to Dismiss on Grounds of Immateriality

In this motion, all of the defendants argue that Counts One, Two and Four of the complaint must be dismissed pursuant to Rule 12(b)(6) because the misrepresentations alleged by the SEC are not material. We disagree.

The Supreme Court has defined the materiality standard for securities fraud cases as "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32, 108 S. Ct. 978 (1988) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S. Ct. 2126 (1976)). The Court described this standard as a "fact-specific inquiry." *Id.* at 240. Similarly, the Seventh Circuit, in a case involving a Rule 10b-5 action, held that "'the determination of materiality requires delicate assessments of the inferences a reasonable [investor] would draw from a given set of facts and the significance of those inferences to him, and these assessments are particularly ones for the trier of fact;' thus a materiality determination is rarely appropriate at the summary judgment stage, let alone on a motion to dismiss." *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 370 (7th Cir. 1997) (citing *TSC Indus.*, 426 U.S. at 450); *see also McGrath v. Zenith Radio Corp.*, 651 F.2d 458, 466 (7th Cir. 1981) (noting that materiality is a question particularly for the trier of fact); *SEC v. Randy*, 38 F. Supp. 2d 657, 669 (N.D. Ill. 1999) (same). In *In re First Chicago Corp. Sec. Litig.*, 769 F. Supp. 1444 (N.D. Ill. 1991), this Court noted that "[m]ateriality has been characterized as a mixed question of law and fact, and courts have admonished that '[o]nly when the disclosures or omissions are so clearly unimportant that reasonable minds could not differ should the ultimate issue of materiality be decided as a matter of law.'" *First Chicago*, 769 F. Supp. at 1451 (quoting *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 641 (3d Cir. 1989)).

Arguments of the defendants notwithstanding, we conclude that the materiality of the misrepresentations at issue in this case is a question better left to the trier of fact. It is simply impossible at this stage of the proceedings to make an informed determination that any or all of

8

the misrepresentations alleged in the complaint are immaterial as a matter of law. For example, the complaint alleges misstatements relating to dozens of accounting categories which ultimately resulted in $1.7 billion in corrections. Given these contentions, how could we possibly find that all of these alleged errors were immaterial? We cannot do so. Rather, it will likely take months of discovery before this Court is able to judge properly the materiality of all the alleged misrepresentations contained in the complaint. Accordingly, the motion to dismiss on grounds of immateriality is denied.

## IV. Motions to Dismiss and/or Strike Claims Requiring Scienter

Next, defendants Buntrock, Rooney and Tobecksen have argued that the complaint should be dismissed as to them because it fails to plead scienter with the degree of specificity required by Rule 9(b). Given the volume of detailed information contained in the complaint about the role each of these defendants played in the alleged securities fraud, the complaint certainly provides a basis for believing that the SEC could prove scienter. Thus, the motions are denied.

Scienter refers to a mental state embracing the intent to deceive, manipulate or defraud. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12, 96 S. Ct. 1375 (1976). The Seventh Circuit has interpreted *Hochfelder* as establishing that "reckless disregard for the truth counts as intent" for the purpose of the § 10(b) scienter requirement. *SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998).

After thoroughly reviewing the complaint, there is little doubt in our mind that the SEC has adequately pled that Buntrock, Rooney and Tobecksen either knowingly or recklessly acted to deceive the public concerning the financial health of Waste Management. According to the

complaint, Buntrock knew of and approved the Action Steps agreement with Arthur Andersen which specified thirty-two "must do" steps to correct accounting practices which were improper and in violation of GAAP, and he knew these Steps had not been taken because the Arthur Andersen engagement partner informed him of this fact. (Complt. at ¶¶ 8, 138-144, 174, 210, 259-60.) Further, Buntrock "set earnings targets" and "personally directed certain of the accounting changes to make the targeted earnings." (Complt. at ¶¶ 17, 298.) The complaint also alleges that Buntrock not only implemented the "top-level adjustment" manipulation scheme with Rooney, but he also was involved in seeing that a number of specific fraudulent adjustments were made, such as the doubling of the salvage values of garbage trucks. (Complt. at ¶¶ 17, 39-45, 298.) Additionally, Buntrock was responsible for reviewing and preparing Waste Management's periodic reports to the SEC, a number of which he signed, which contained the allegedly fraudulent financial statements and many other allegedly false and misleading statements about the company's business. (Complt. at ¶¶ 81, 297-98, 306.)

With respect to the activities of Rooney, the complaint also more than adequately pleads scienter. Rooney served as president and Chief Operating Officer of Waste Management, chairman of Waste Management's largest subsidiary, which accounted for more than 50% of the company's consolidated revenue and approximately 70% of the reported earnings, and he ultimately replaced Buntrock as CEO of Waste Management in 1996. During his tenure as a director and officer of Waste Management, Rooney was responsible for reviewing all periodic reports submitted to the SEC, which allegedly contained information which he knew to be false and misleading. (Complt. at ¶¶ 98-99, 107-108, 116, 123.) As with Buntrock, the complaint also asserts that "Rooney knew each of the accounting and GAAP violations listed in the Action

10

Steps, to which he agreed[,]" and that he knew or recklessly disregarded the fact that Waste Management continued to commit the accounting violations in the Action Steps because he reviewed and authorized the financial statements every quarter. As with Buntrock, the complaint alleges that Rooney had actual knowledge of the Action Steps because the Arthur Andersen engagement partner told him annually about certain accounting violations during their year end closing meeting. In addition, the complaint is replete with allegations that Rooney was intimately familiar with the highly suspect top-level adjustments, in which the company's consolidated financial statements were manipulated so that the company could match pre-set earnings targets. (Complt. at ¶¶ 41, 42, 82.)

As for Tobecksen, we reach the same conclusion that we have for Buntrock and Rooney. The SEC has demonstrated Tobecksen's scienter by alleging that he personally engaged in numerous significant top-level adjustments which were later shown to be materially misleading. For example, for the fourth quarter of 1994, Tobecksen created a new and improper methodology that overstated quarterly income by $21 million. He was informed by internal Waste Management accountants that this methodology was wrong but he continued to utilize it during future reporting cycles. The net effect of this "error" was a $100 million overstatement of earnings by 1996. (Complt. at ¶¶ 169-170.) Further, he manipulated the earnings for the fourth quarter of 1996 by creating a "new and bogus salvage value" for Spotter trucks (from $0 to $25,000) and then compounding the effect of the manipulation by recording a $17 million "cumulating catch-up," reversing into income "seven years worth of depreciation expense" in one quarter. (Complt. at ¶¶ 255-56.) Additionally, the SEC has adequately pled scienter in its description of Tobecksen's creative use of "geography entries." Geography worked by "simply

11

mov[ing] tens of millions of dollars from one income category of expense to another – from the correct one to an incorrect one." (Complt. at ¶ 75.) When questioned about these entries by the company's new management, Tobecksen explained that "the entries had to continue year-to-year to avoid an 'explanation problem.'" (*Id.*) We agree with the SEC – this statement demonstrates scienter.

Finally, while there is much we could say about Buntrock, Rooney and Tobecksen's argument that they should be absolved from liability because they "reasonably relied" on the work product of their "independent" outside auditor Arthur Andersen, we will restrain ourselves. Suffice to say, any such argument is categorically rejected. Therefore, the defendants' motions to dismiss for failure to plead scienter are denied.

## V.    Motion to Dismiss or Strike the Claims for Aiding and Abetting

In this motion, all of the defendants have joined together to argue that the SEC's claims for aiding and abetting in Counts One, Two and Three should be dismissed for three reasons: 1) the claims are barred by the statute of limitations; 2) the SEC has no authority to pursue claims for aiding and abetting under the Securities Act; and 3) the SEC has not properly pled scienter for aiding and abetting. For the following reasons, this motion to dismiss is denied.

First, we will address the statute of limitations argument. The defendants contend that the aiding and abetting counts should be dismissed because they were not filed within the four-year "catch-all" period of 28 U.S.C. § 1658. That section states that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658. According to the defendants, because the statute which authorizes the SEC to

pursue aiding and abetting claims, 15 U.S.C. § 78t(e) or "Section 20(e)," was enacted in 1995 as part of the Private Securities Litigation Reform Act, the four year statute of limitations should apply. We disagree.

The United States Supreme Court has recently considered this issue in the context of the Civil Rights Act Amendments of 1991. *See Jones v. R.R. Donnelley & Sons Co.*, 2004 WL 936488 (May 3, 2004). The Court's analysis of Section 1658 in that case is instructive here. In considering the applicability of Section 1658, the Court held that a cause of action "arises under an Act of Congress enacted after December 1, 1990 – and is therefore governed by Section 1658's four year statute of limitation – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Id.* at *7. The Supreme Court further emphasized that "[w]hat matters is the substantive effect of an enactment – the creation of new rights of action and corresponding liabilities – not the format in which it appears in the Code." *Id.*

Section 20(e) of the Private Securities Litigation Reform Act of 1995, which authorizes the SEC to bring claims for aiding and abetting primary securities law violations, was enacted in response to the Supreme Court's decision in *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 114 S. Ct. 1439 (1994). Congress amended the Exchange Act by adopting Section 20(e) to ensure that courts would not extend *Central Bank* to eliminate the SEC's power to enjoin aiding and abetting violations. In drafting Section 20(e), Congress explicitly based the SEC's power to sue for aiding and abetting on the SEC's pre-existing and complementary power to sue for primary securities violations. In particular, Section 20(e) states that "[f]or purposes of any action brought by the Commission under paragraph (1) or (3) of Section 21(d)," the SEC may bring suit for aiding and abetting. 15 U.S.C. § 78t(e). Thus, under the analytical framework

13

of the Supreme Court's decision in *Jones*, it is clear that Section 20(e) did not create any new

rights of action or corresponding liabilities. Instead, Section 20(e) is an act of Congress that was

based on the continued existence of a statutory cause of action that was previously enacted and

clarified an existing right. Therefore, the four-year "catch-all" statute of limitations contained in

28 U.S.C. § 1658 is inapplicable.

But what is the proper statute of limitations for Section 20(e)? Based on our reading of

Section 20(e) and its explicit connection to Sections 21(d)(1) and (3), we agree with the SEC that

the securities law violation of the aider and abettor is the same violation as the primary violator.

In other words, the Commission's authority to enjoin and seek penalties from aiders and abettors

is the same authority for seeking such relief from primary violators. Given the symmetry

between primary and secondary liability, the statute of limitations applicable to enforcement

actions against aiders and abettors under Section 20(e) necessarily is the same for such actions

against primary violators under Section 21(d)(1) and (3). Injunctive relief under Section 21(d)(1)

is not subject to any statute of limitations, and claims for civil penalties under Section 21(d)(3)

are subject to a five-year statute of limitations. Accordingly, we find that, at the very least, the

statute of limitations for the SEC's aiding and abetting claims in this case is five years. Since

both parties acknowledge that the complaint was filed within this time period, the motion to

dismiss on these grounds is denied.

The second portion of the defendants' argument in support of their motion to dismiss is

that the SEC lacks authority to pursue aiding and abetting claims pursuant to the Securities Act

of 1933. The defendants rely on the Supreme Court's decision in *Central Bank* to support this

position. We disagree. In *Central Bank*, the majority stated repeatedly that the case involved

private plaintiffs, and in so doing, the Court looked to a number of factors unique to private securities actions. *See Central Bank*, 511 U.S. at 178-180. In fact, in a later case, the Court noted that "*Central Bank's* discussion concerned only private civil litigation under § 10(b) and Rule 10b-5. . . ." *United States v. O'Hagan*, 521 U.S. 642, 664, 117 S. Ct. 2199 (1997). Quite obviously, the instant suit is not a private securities action, but rather one brought by the SEC. Thus, we conclude that the Court's limitation of the right of private litigants to prosecute aiding and abetting claims pursuant to Section 10(b) of the Exchange Act does not, by analogy, extend to the SEC's authority to bring aiding and abetting claims pursuant to Section 17(a) of the Securities Act. This conclusion is bolstered by the fact that Congress, by enacting Section 20(e) of the Private Securities Litigation Reform Act, "flatly barred the judicial extension of *Central Bank* to impede SEC enforcement actions against aiders and abettors." *SEC v. Fehn*, 97 F.3d 1276, 1287 (9th Cir. 1996); *see also Soranno v. New York Life Ins. Co.*, 2000 WL 748142, at *4-5 (N.D. Ill. May 31, 2000).

Finally, the defendants contend that Counts One through Three of the complaint should be dismissed because the SEC has failed to properly plead scienter for an aiding and abetting claim. The defendants argue that the scienter standard for aiding and abetting claims is "knowingly" while the SEC asserts that the proper standard includes "reckless" behavior. We need not directly address this issue. Given our reading of the SEC's complaint, we have already concluded above that the complaint is replete with specific allegations that the defendants acted with actual knowledge of the fraud against the public concerning the financial health of Waste Management. Therefore, the defendants' motion to dismiss or strike the claims for aiding and abetting is denied.

## VI.    Motion To Dismiss or Strike the Claim for Control Person Liability

This motion is brought by defendants Buntrock and Rooney to dismiss or strike the

SEC's claim which seeks to hold them liable as "control persons" under Section 20(a) of the

Exchange Act, 15 U.S.C. § 78t(a).  Because we find that Section 20(a) authorizes the SEC to

hold a "control person" jointly and severally liable with the controlled entity and because the

SEC has stated a claim for control person liability against Buntrock and Rooney, the motion is

denied.

At the core of this motion is an apparent dispute between the Second and Sixth Circuits

concerning the availability of a cause of action for control person liability under Section 20(a) of

the Exchange Act.  Section 20(a) states that: "Every person who, directly or indirectly, controls

any person liable under any provision of this title . . . shall also be liable jointly and severally

with and to the same extent as such controlled person to any person to whom the controlled

person is liable. . . ."  15 U.S.C. § 78t(a).  The Sixth Circuit in *SEC v. Coffey*, 493 F.2d 1304,

1318 (6th Cir. 1974), held that "Section 20(a) of the 1934 Act may not be relied upon by the SEC

in an injunctive enforcement action."  More recently, however, the Second Circuit in *SEC v. First

Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996), held that "[s]ince § 20(a) is available as an

enforcement mechanism to 'any person to whom such controlled person is liable,' and the 1934

Act includes government agencies in the definition of 'person,' *see* 15 U.S.C. § 78(c)(a)(9), we

have upheld the SEC's authority to pursue an enforcement action under § 20(a)."  The current

weight of authority from courts around the country is that the Second Circuit's position on this

issue is the correct one.  *See, e.g., SEC v. Enterprises Solutions, Inc.*, 142 F. Supp. 2d 561, 575

(S.D.N.Y. 2001); *SEC v. Fitzgerald*, 135 F. Supp. 2d 992, 1029 (N.D. Cal. 2001). We agree with these courts and hold that the SEC may pursue an enforcement action pursuant to Section 20(a).

In order to state a Section 20(a) claim, the SEC must allege: (1) a primary securities violation; (2) that Buntrock and Rooney exercised general control over the operations of Waste Management; and (3) that Buntrock and Rooney "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). *See also Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1138-39 (7th Cir. 1992); *In re Westell Tech., Inc. Sec. Litig.*, 2001 WL 1313785, at *12 (N.D. Ill. Oct. 26, 2001). The SEC in this case has properly pled all of these elements for an aiding and abetting claim against Buntrock and Rooney. The complaint alleges that all defendants, including Buntrock and Rooney, acted with scienter in participating in a fraudulent scheme to manipulate and falsify the publicly reported financial results of Waste Management. The complaint further alleges that, as the senior most officers who participated in the fraud, Buntrock and Rooney possessed the power to direct or cause the direction of the management and policies of Waste Management. Also, the complaint alleges that Buntrock and Rooney exercised control over the operations of Waste Management by reviewing and signing the allegedly misleading financial statements and by making other allegedly false public statements about the company's financial results. The fact that the controlled person, in this case Waste Management, is not a defendant in this action is of no legal significance to the defendants' motion.

Finally, we reject the defendants' argument that the SEC may not pursue a control person liability claim against them pursuant to Section 17(a) of the Securities Act. The law is clear that

such a claim is permissible under either Section 20(a) of the Exchange Act or Section 17(a) of the Securities Act. *See, e.g., SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) (court imposed joint and several control person liability on principal of Hughes Capital in violation of Sections 17(a)(2) and (3) of the Securities Act); *SEC v. Cross. Fin. Servs.*, 908 F. Supp. 718, 734-36 (C.D. Cal. 1995) (joint and several disgorgement order based on violations of Section 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act). *Accord SEC v. World Gambling Corp.*, 555 F. Supp. 930, 931-32 (S.D.N.Y. 1983) (two principal officers of defendant corporation held jointly and severally liable for profits resulting from scheme to sell unregistered securities in violation of the registration and anti-fraud provisions of the Securities Act and Exchange Act). Accordingly, Buntrock and Rooney's motion to dismiss or strike the claim for control person liability is denied.

## VII.    Motion to Dismiss Counts Three and Four

In this motion, defendants Koenig, Hau and Tobecksen argue that Counts Three and Four of the complaint should be dismissed because the SEC lacked the statutory authority to promulgate Rule 13b2-1. Further, the defendants contend that the aiding and abetting claims contained in Count Three related to Section 13(b)(2)(A) of the Exchange Act are time barred and procedurally deficient. Finally, Koenig and Hau assert that Count Four fails because the complaint does not allege that their alleged misrepresentations to Arthur Andersen were material under Rule 13b2-2.

In Count Three of the complaint, the SEC alleges that Koenig, Hau and Tobecksen violated Rule 13b2-1, 17 C.F.R. § 240.13b2-1, "directly or indirectly . . . by falsifying or causing to be falsified Waste Management's books, records and accounts subject to Section 13(b)(2)(A)

of the Exchange Act." (Complt. at ¶ 354.) The SEC also alleges that Koenig, Hau and Tobecksen aided and abetted Waste Management's violations of Section 13(b)(2)(A) of the Exchange Act. In Count Four, the SEC alleges that Koenig and Hau violated Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2, by "directly or indirectly" making false statements to Waste Management's outside auditors.

In attacking Count Three, the defendants argue that the SEC exceeded its statutory authority under Section 13(b)(2) of the Exchange Act in issuing Rule 13b2-1, and thus, Count Three must fail as a matter of law. We disagree. While the defendants certainly raise interesting questions of statutory construction and administrative law, the overwhelming weight of authority in this country states that the SEC may bring enforcement actions pursuant to Rule 13b2-1. Implicit in each of these holdings is the conclusion that issuance and enforcement of Rule 13b2-1 falls within the SEC's statutory mandate. *See, e.g., SEC v. Kahn*, 2002 WL 1163723, at *13 (N.D. Ill. May 31, 2002) (granting summary judgment against officers of issuer for violation of Rule 13b2); *SEC v. Pace*, 173 F. Supp. 2d 30, 32-34 (D.D.C. 2001) (granting summary judgment against issuer's CEO for violation of 13b2-1); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 965-66 (S.D.N.Y. 1997) (granting summary judgment against issuer's president for violation of Rule 13b2-1, and noting that such rule is "not limited to corporate officers or employees"); *SEC v. Gallagher*, 1989 WL 95252, at *7-8 (E.D. Pa. Aug. 16, 1989) (granting summary judgment against issuer's controller for violations of Rule 13b2-1); *SEC v. World-Wide Coin Inv., Ltd.*, 567 F. Supp. 724, 748, n.40 & n.41 (N.D. Ga. 1983) (reciting cases brought by SEC under Rules 13b2-1 and 13b2-2). We feel these decisions are correct, and thus, we reject the defendants' argument that the SEC lacks the authority to enforce Rule 13b2-1.

As for the other arguments raised by the defendants in their motion to dismiss Counts Three and Four, they are rejected for the reasons stated earlier in this opinion. In Part 5, we concluded that aiding and abetting claims are not subject to the four-year statute of limitations contained in 28 U.S.C. § 1658. Furthermore, the SEC's complaint states a claim for aiding and abetting because it contains numerous allegations that the defendants in this case, including Koenig, Hau and Tobecksen, acted with actual knowledge of the fraud perpetrated on the public concerning the financial health of Waste Management. Additionally, in Part 3 of this order, we concluded that the misrepresentations alleged in the complaint were material for the 10b-5 cause of action. We now extend that finding here to hold that the alleged misrepresentations were material for purposes of the Rule 13b2-2 claim stated in Count Four of the complaint. Therefore, Koenig, Hau and Tobecksen's motion to dismiss Counts Three and Four is denied.

## VIII.  Motion To Strike Request for Civil Penalties

In this motion, defendants Rooney and Koenig argue that the SEC's request for civil monetary penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act should be stricken because the request is barred by the applicable statute of limitations. Additionally, the defendants contend that any civil penalties sought on the theory that they aided and abetted primary securities violations should also be stricken on statute of limitations grounds.

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act do not contain their own statute of limitations. As a result, both parties agree that the request for civil penalties presented in this case is governed by the catch-all five-year statute of limitations provision of 28 U.S.C. § 2462. Section 2462 provides that "[e]xcept as otherwise provided by

Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . ." 28 U.S.C. § 2462. The issue presented in this motion is: when does a claim "accrue" for purposes of a request for civil monetary penalties in a securities fraud case? Surprisingly, our research has uncovered no decision that has directly addressed the question.

To help us answer this question, the parties have provided a pair of cases which they feel provide important insight on the proper resolution of this issue. The defendants point us to the D.C. Circuit's decision in *3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994). The SEC offers the Seventh Circuit's decision in *Law v. Medco Research, Inc.*, 113 F.3d 781 (7th Cir. 1997). *3M Co.* involved an U.S. Environmental Protection Agency administrative proceeding that sought to impose penalties for violations of the Toxic Substances Control Act. In discussing the Section 2462 accrual issue, the D.C. Circuit held that a claim accrues when the cause of action first existed and not when the violation was first discovered. *3M Co.*, 17 F.3d at 1462. Essentially, the D.C. Circuit rejected what has become known as the "discovery of violation" rule for purposes of Section 2462. In *Law*, the Seventh Circuit was confronted with the issue of when a claim accrues under the one-year statute of limitations for Rule 10b-5 claims. In the context of securities fraud cases, the Seventh Circuit adopted the "discovery of violation" rule because it is often difficult for a plaintiff to know that he or she has been the victim of a fraud until many years after the fraud has been committed. *Law*, 113 F.3d at 785; *see also Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1336-37 (7th Cir. 1997).

21

In reaching its conclusion, the Seventh Circuit in *Law* looked to other sections of the Securities Act to determine Congress' intent regarding claim accrual for purposes of the applicable statute of limitations in a Rule 10b-5 case. Specifically, the court noted that section 13 of the Securities Act provides that its one-year statute of limitations begins to run "after the discovery of the untrue statement . . . or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. The court took this to mean that a plaintiff "gets a year after he learned or should have learned the facts that he must know to know that he has a claim." *Law*, 113 F.3d at 785. While we acknowledge that the Seventh Circuit was addressing the accrual date for the statute of limitations in the context of a Rule 10b-5 fraud action, we feel the court's general adoption of the "discovery of violation" rule in securities fraud cases should be extended to claims for civil penalties in securities fraud actions governed by the five-year statute of limitations in Section 2462. In other words, the five-year statute of limitations for civil penalties does not accrue when the fraud occurs, but rather when "the plaintiff learns, or should have learned through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to enable him[,] by such further investigation as the facts would induce in a reasonable person[,] to sue" within five years. *Fujisawa*, 115 F.3d at 1334 (citing *Law*, 113 F.3d at 785). This conclusion also is consistent with the D.C. Circuit's decision in *3M Co.* because the court there was not faced with a claim for penalties in the context of a fraud suit. In fact, the D.C. Circuit acknowledged in a footnote that accrual of the statute of limitations could be affected by the "fraudulent concealment doctrine." *3M Co.*, 17 F.3d at 1461 n.15. Therefore, we hold that the date of accrual of the five-year statute of limitations of 28 U.S.C. § 2462 for securities fraud cases is governed by the "discovery of violation" rule.

22

For purposes of the instant case, this holding establishes that the claim for civil penalties against Rooney and Koenig is timely. The earliest possible accrual date in this case is October 10, 1997, the date on which the successors of Rooney and Koenig made the first public disclosure that Waste Management may have misstated its prior financial results. In fact, under the Seventh Circuit's holding in *Law*, the actual accrual date is probably much later than October 10, 1997 because the SEC likely did not have information demonstrating that the defendants acted with the requisite scienter until sometime in 1998. *See Law*, 113 F.3d at 786. Nevertheless, even assuming that October 10, 1997 is the accrual date, the SEC's March 26, 2002 request for civil penalties against Rooney and Koenig is timely. Therefore, the motion to strike the request for civil penalties is denied.

## IX.     Motion to Dismiss or Strike the Claim for Penalties under Section 21A

Finally, in this motion, defendants Buntrock and Rooney seek to dismiss or strike the claim for penalties under Section 21A of the Exchange Act, 15 U.S.C. § 78u-1. In particular, the defendants argue that the penalty claims are barred by the five-year statute of limitation contained in Section 21A(d)(5). Further, Buntrock and Rooney contend that the SEC has failed to state a claim for penalties under Section 21A.

First, we will address the statute of limitations issue. Section 21A(d)(5) of the Exchange Act provides that "[n]o action may be brought under this section more than 5 years after the date of the purchase or sale." 15 U.S.C. § 78u-1(d)(5). The SEC in its response to the motion to dismiss has stated that it is not seeking penalties for any sales made by Buntrock and Rooney prior to March 26, 1997. We accept that representation. Therefore, any request for penalties with respect to trades made before March 26, 1997 will not be entertained.

The remaining portions of this motion are puzzling to us. Apparently, Buntrock and Rooney argue that the complaint does not properly plead the scienter required to seek penalties under Section 21A and that the complaint does not allege that the defendants "used" the alleged inside information. Section 21A provides in part that "whenever it shall appear to the Commission that any person has violated any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information . . .[,]" the SEC may bring an action seeking a civil penalty in the amount of three times their illegal trading profits gained or losses avoided. 15 U.S.C. § 78u-1. Our interpretation of this statute leads us to believe that the only thing the SEC has to plead in its complaint in order to seek <u>penalties</u> under Section 21A is a primary violation of that section. We are unfamiliar with any independent requirement to plead specific elements for damages sought in a prayer for relief. Damages will be assessed only if the trier of fact determines that Buntrock and Rooney are liable for insider trading.

Based on our reading of the complaint, we find that the SEC has pled a *prima facie* case of insider trading against Buntrock and Rooney. The complaint alleges that Buntrock and Rooney engaged in certain Waste Management stock transactions knowingly or recklessly disregarding that Waste Management's earnings were grossly overstated and that, consequently, the stock was substantial overpriced. (Complt. at ¶ 341.) Obviously, this type of information was not generally available to the general trading public. The complaint also states that, because they were aware that the alleged fraud was starting to unravel, they sold large blocks of stock so as to avoid considerable losses. (*Id.*) Nevertheless, the defendants take issue in their motion with the SEC's decision to plead alternatively scienter in the complaint as both knowingly and

recklessly. As we have done earlier in this opinion, we see no need to address the scienter standard directly because we are satisfied that the SEC has provided countless allegations in its complaint demonstrating that Buntrock and Rooney acted with actual knowledge throughout all stages of the purported fraud.

Finally, we would like to address briefly the defendants' argument regarding "use" of the allegedly insider information. At the outset, we note that the complaint alleges that Buntrock and Rooney knowingly used insider information they possessed regarding the true financial condition of Waste Management to sell hundreds of thousands of shares before the market and the public became aware of the company's accounting improprieties. (Complt. at ¶ 341.) However, the defendants argue that the complaint is deficient because it does not allege that they "used" the inside information as opposed to simply "possessing" it. While this issue may be significant as we proceed to trial, the relevant cases make it clear that this is a proof and not a pleading issue. *See Lipson*, 278 F.3d at 661; *SEC v. Adler*, 137 F.3d 1325, 1338-39 (11th Cir. 1998); *United States v. Teicher*, 987 F.2d 112, 120-21 (2d Cir. 1993). Thus, there is no need to address this argument now. Therefore, Buntrock and Rooney's motion to strike the claim for penalties under Section 21A of the Exchange Act is denied.

## CONCLUSION

For the foregoing reasons, the numerous motions to dismiss filed by all of the defendants [Docket #126-1] are all denied. As we have long stated, the SEC's complaint raises serious allegations of troubling conduct by all of the defendants. It is now time to address the problems

raised in the complaint on the merits. Defendants are ordered to answer the complaint on or before June 18, 2004.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: May 25, 2004