IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 02 C 2180 |
| v. | ) | |
| | ) | Judge Wayne R. Andersen |
| JAMES E. KOENIG, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT JAMES E. KOENIG'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

On March 26, 2002, the Securities and Exchange Commission (the "SEC") filed its complaint in this action, alleging that over a six-year span beginning in 1992 and continuing into 1997, James Koenig engaged in a systematic scheme to falsify and misrepresent Waste Management, Inc.'s ("Waste Management" or the "Company") financial results by overstating net income. Now, after an exhaustive investigation and years of discovery, the SEC's proof of Mr. Koenig's alleged fraud is sorely lacking. Because there is no evidence that any of the misstatements or omissions that Mr. Koenig is alleged to have made were material, summary judgment must be granted.

The SEC claims that Mr. Koenig caused the Company to file financial statements for the period 1992 through the third quarter of 1997 that were erroneous and misleading. Under the "move the market" test, to establish the materiality of these misstatements or omissions, the SEC must demonstrate that the market reacted negatively when the "truth" about the allegedly misleading prior financial disclosures was ultimately revealed.

The undisputed facts, however, establish exactly the opposite. After the close of trading on February 24, 1998, the Company announced that it would be restating $1.1 billion in net income, consisting principally of expenses, for the period 1992 through 1996 and the first three quarters of 1997. (Defendant James E. Koenig's Local Rule 56.1 Statement of Material, Uncontested Facts In Support of Defendant's Motion for Partial Summary Judgment ("Def's 56.1 Statement"), ¶ 6.) The next day, on February 25, 1998, the price of Waste Management's common stock *increased* by 5.3%, from $23.50 to $24.75, on trading of more than six million shares. (*Id.* ¶ 7.) Thus, under the move the market test, the alleged misrepresentations and omissions are immaterial as a matter of law.[1]

Materiality is a required element of three of the SEC's claims against Mr. Koenig. Because the SEC cannot establish this required element, Mr. Koenig is entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on Counts I, II, and IV of the SEC's complaint.

## ARGUMENT

A party is entitled to summary judgment when "[t]he pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate in this case because there is no genuine issue as to any material fact with respect to a required element of the SEC's claims against Mr. Koenig in Counts I, II and IV – namely the materiality of the alleged misstatements or omissions. The SEC

---

[1] If this case proceeds to trial, Mr. Koenig will demonstrate that no such misrepresentations or omissions occurred in any event.

has not identified – and cannot identify – any evidence establishing the materiality element of its claims.

I.  **THE SEC MUST PRESENT EVIDENCE THAT THE SUPPOSED MISSTATEMENTS AND OMISSIONS ARE MATERIAL – OTHERWISE, THE COURT MUST GRANT SUMMARY JUDGMENT FOR MR. KOENIG.**

Materiality is a required element of three of the SEC's claims against Mr. Koenig. In Counts One, Two and Four of its complaint, the SEC accuses Mr. Koenig of: securities fraud under Section 17a of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 (Count I); aiding and abetting violations of Section 13(a) of the Securities Exchange Act of 1934 (Count II); and misleading auditors in violation of SEC Rule 13b2-2 (Count IV). To prevail on any of these counts, the SEC must prove, among other things, that the alleged misstatements at issue were "material." 15 U.S.C. § 77q(a), 78j(b); 17 C.F.R. § 240.10b-5; 17 C.F.R. § 240.12b-20; 17 C.F.R. § 13b2-2; *SEC v. Jakubowski*, 912 F. Supp. 1073 (N.D. Ill. 1996); *In re Centuri, Inc.*, Exchange Act Release No. 34-37128, 61 S.E.C. Docket 1978, 1996 WL 191585, at *5 (Apr. 19, 1996).[2]

At this stage of these proceedings, Mr. Koenig is entitled to summary judgment if the SEC cannot identify concrete evidence to support its claim that the alleged misstatements and omissions in the instant case are material. As the Supreme Court has stated: "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552

---

[2] Count III alleges a failure to make and keep books, records and accounts that, in reasonable detail, accurately and fairly reflected Waste Management's transactions and dispositions of its assets under 15 U.S.C. § 78m(b)(2)(A) and 17 C.F.R. § 240.13b2-1.

(1986). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

Indeed, it is well-established in this circuit that "summary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1117 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). Consistent with this precedent, this Court routinely has awarded summary judgment when a party fails to adduce any evidence of an element of its claim. *See, e.g., Manning v. The University of Chicago*, No. 03 C 5802, 2005 WL 3244050, at *6 (N.D. Ill. Aug. 24, 2005) (Andersen, J.) ("A party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion."); *Solaia Technology LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797 (N.D. Ill. 2005) (Filip, J.) (granting summary judgment to defendant in patent infringement action where plaintiff "offered no evidence" that the alleged infringing computer programs utilized a spreadsheet program); *Alexander v. Unlimited Progress Corp.*, No. 02 C 2063, 2004 WL 2384645 (N.D. Ill. Oct. 20, 2004) (Shenkier, J.) (granting summary judgment to plaintiff on Fair Debt Collection Practices Act claim because defendant "offered no evidence" in support of its bona fide error defense).

II. **AN ALLEGED MISSTATEMENT OR OMISSION IS NOT MATERIAL IF ITS DISCLOSURE DOES NOT MOVE THE MARKET.**

To establish materiality, the SEC must prove that there is "'a substantial likelihood that the disclosure of the omitted fact[s] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *Basic Inc. v.*

*Levinson*, 485 U.S. 224, 231-32, 108 S. Ct. 978, 983 (1988) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S. Ct. 2126, 2132 (1976)).

Courts examine the stock market's reaction to the disclosure of the supposedly "correct" information to determine whether the alleged misstatements of a publicly traded company would have altered the total mix of information made available to investors. Under this "move the market" test, unless a stock price *declines* on news of the disclosure, the alleged misstatement or omission is immaterial as a matter of law. *See Oran v. Stafford*, 226 F.3d 275, 282-83 (3d Cir. 2000); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997); *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906 (N.D. Ill. 2002) (Bucklo, J.); *see also Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 902 (N.D. Ill. 2001) (holding that failure to disclose FDA warning letter was not material because, among other things, "if reasonable investors believed the letter altered the total mix of information, the market would have reacted, at least a little bit"), *aff'd sub nom, Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001).

The "move the market" test is rooted in the efficient market theory. Under that theory, information important to reasonable investors is immediately incorporated into the stock price. In *Basic*, the Supreme Court acknowledged the connection between the efficient market theory and the legal concept of materiality:

> Recent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available information and, hence, any material misrepresentations . . . . Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action.

485 U.S. at 246-47, 108 S. Ct. at 991-92. Recognizing the "basic economic insight" on which the efficient market theory rests, Judge Alito, writing for the Third Circuit, explained the "move the market" test:

> [I]n an open and developed securities market like the New York Stock Exchange, the price of a company's stock is determined by all available material information regarding the company and its business. In such an efficient market, "information important to reasonable investors . . . is immediately incorporated into the stock price." As a result, when a stock is traded in an efficient market, the materiality of disclosed information may be measured post hoc by looking to the movement, in the period *immediately following disclosure*, of the price of the firm's stock. Because in an efficient market "the concept of materiality translates into information that alters the price of the firm's stock," if a company's disclosure of information has no effect on stock prices, "it follows that the information disclosed . . . was immaterial as a matter of law."

*Oran*, 226 F.3d at 282 (citations omitted; emphasis added).

The Seventh Circuit has likewise acknowledged that "[i]n an efficient capital market, all information known to the public affects the price . . . ." *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 731 (7th Cir. 2004) (citing *Basic*); *see also Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 516 (7th Cir. 1989) ("Proceedings in the ASLB . . . were public knowledge. The market price of the firm's stock, which Wielgos and his class paid in the shelf offering, reflected this information."). The move the market test is a logical, predictable outgrowth of the efficient market theory, as Judge Bucklo found in *Grimes*.

In *Grimes*, the defendant allegedly failed to disclose that it had improperly used a "pooling of interests" method of accounting that had inflated its profitability. 185 F. Supp. 2d at 909. In late October 1999, the media published reports raising questions about the defendant's accounting practices, and the stock dropped by almost half, from $40 to $24, in the ensuing days. *Id.* Shortly thereafter, the company reported that its CEO had resigned under pressure, among other management shake-ups, and that an outside auditor was reviewing the propriety of the pooling method. *Id.* The company continued to deny that its pooling method was improper, however. *Id.* Nonetheless, after the announcement of the management turnover, the stock price continued its downward spiral to $13.50. *Id.* at 909-10.

6

In January 2000, the defendant company issued a press release announcing that it would be restating its financials and reversing the pooling method. *Id.* at 910. Upon the company's disclosure, however, the price of the stock went up, not down. *Id.* Relying on the move the market test, the *Grimes* court dismissed the complaint, concluding that the alleged misstatements were immaterial as a matter of law because the stock price "did not fall but rose when Navigant disclosed its accounting errors." *Id.* at 914. Simply put, under *Grimes*, if the disclosure of alleged misstatements or omissions does not adversely affect a company's stock price, then those alleged misstatements or omissions are immaterial as a matter of law.

III. **THE UNDISPUTED FACTS ESTABLISH THAT THE PUBLIC DISCLOSURE OF THE ALLEGED MISSTATEMENTS AND OMISSIONS DID NOT MOVE THE MARKET.**

There is no evidence that the public disclosure of the alleged misstatements and omissions at issue in this case caused any negative reaction in the marketplace. On February 25, 1998, the first day of trading after the market learned that Waste Management would be restating its net income for the period 1992 through 1996 and the first three quarters of 1997 in the amount of $1.1 billion, the Company's stock price did not fall, but rather *rose* by 5.3%. (Def's 56.1 Statement, ¶¶ 6, 7.) Under the move the market test, that is the end of the analysis – because the Company's stock price did not decline upon disclosure of the alleged misstatements and omissions, they are immaterial as a matter of law.

Recognizing that the actual evidence does not support its claims of materiality, the SEC will undoubtedly argue – as it has done in the past – that "[t]he materiality of the fraud is essentially self-proving." (*See* Pl.'s Resp. to Defs' Mot. to Dismiss on Grounds of Immateriality as a Matter of Law, at 2.) Mere argument, however, cannot carry the day in responding to a motion for summary judgment. Legal elements are not, as the SEC suggests, "self-proving" – they must be proven with admissible evidence. But, after years of discovery, the SEC has not

been able to develop any evidence to establish the required materiality element – because no such evidence exists.

*SEC v. Guenthner*, 395 F. Supp. 2d 835 (D. Neb. 2005), recently rejected exactly the type of unsupported argument that the SEC attempts to make here. In *Guenthner*, the SEC alleged that the defendant officers committed fraud by causing their company, InaCom Corporation, to overstate its earnings in public filings and then concealing the fraud by lying to auditors. *Id.* at 837. When InaCom announced that its earnings were below expectations, and that the next quarter looked bleak, its stock price plummeted. *Id.* at 840. The SEC's lawsuit followed.

The defendants moved for judgment as a matter of law at the close of the SEC's case, arguing that the SEC had not met its burden on any elements of its claims, including materiality. The *Guenthner* court granted the defendants' motion, citing a "complete and utter failure of proof by the Commission." *Id.* at 847. Among other things, the court noted that the SEC's only proof of materiality consisted of "its bare assertion that it is obvious that a reasonable investor would find earnings and profitability important." *Id.* at 848. Finding such argument insufficient to prove the materiality element of the SEC's claims, the *Guenthner* court granted the defendants' motion.

The same result is warranted here. As in *Guenthner*, the SEC has no proof of materiality – only unsupported arguments that the misstatements and omissions alleged here must be material. But, saying something is "material" does not make it so. Indeed, it is well-settled that "attorney argument is not evidence." *See In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 778 (S.D. Tex. 2003); *see also Baxa Corp. v. McGaw, Inc.*, 996 F. Supp. 1044, 1051 (D. Colo. 1997) ("[a]ttorney argument . . . is insufficient to survive summary judgment"), *aff'd sub nom*, *Baxa Corp. v. Excelsior Med. Corp.*, 185 F.3d 883 (Fed. Cir. 1999). Because the SEC has no

evidence of the materiality of the claimed misstatements, it cannot meet its burden of proof on a required element and summary judgment should be granted in favor of Mr. Koenig on Counts I, II and IV.

## CONCLUSION

The Seventh Circuit and this court have recognized that summary judgment is the "put up or shut up" moment in a lawsuit. Because the SEC cannot "put up" any evidence of materiality, this Court should grant summary judgment for Mr. Koenig on Counts I, II and IV of Plaintiff's complaint, and such other relief as this Court deems just and proper.

Dated: December 15, 2005

Respectfully submitted,

s/ Christopher R. Clark
Sarah R. Wolff (Bar No. 3123733)
Jonathan S. Quinn (Bar No. 6200495)
Matthew J. O'Hara (Bar No. 6237795)
Christopher R. Clark (Bar No. 6236859)
Hillary A. Weis (Bar No. 6278676)
Sachnoff & Weaver, Ltd.
10 South Wacker Drive
Chicago, IL 60606
(312) 207-1000
cclark@sachnoff.com

*Attorneys for Defendant James E. Koenig*

793863v11