IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAMES E. KOENIG, ) <br> ) <br> Defendant. ) | Case No. 02 C 2180 <br><br> Judge Wayne R. Andersen |

**KOENIG'S MOTION *IN LIMINE* (NO. 1) TO EXCLUDE EVIDENCE OF OR
REFERENCE TO SETTLEMENTS**

Defendant James E. Koenig, by his attorneys, respectfully moves *in limine*, pursuant to Fed. R. Evid. 402, 403, 408, and 802, to exclude evidence of or reference to any settlements, as defined below, in related civil litigation and SEC enforcement and administrative proceedings at trial. These include the Consent Decrees between Plaintiff Securities and Exchange Commission ("SEC") and Dean Buntrock, Phillip Rooney, Thomas Hau, Herbert Getz, and Bruce Tobecksen (the "Former Defendants") (attached as Exhibits 1A-E) and corresponding final judgments (attached as Exhibits 2A-E);[1] the Consent Decrees between the SEC and Arthur Andersen, LLP ("Andersen"), and former Andersen partners Robert Allgyer, Walter Cercavschi, and Edward Maier (attached as Exhibit 3A-D); the Orders Instituting Proceedings ("OIPs") against Andersen, and Allgyer, Cercavschi, Maier, and Andersen partner Robert Kutsenda (collectively, the individuals shall be referred to as "the Andersen Partners") (attached as Exhibit 4A-E); the settlement reached in *In re Waste Management Securities Litigation* (the "Class Action,"

---

[1] During the 1992 - 1996 time period, Buntrock served as Waste Management's Chief Executive Officer, Rooney as its Chief Operating Officer, Hau as its Chief Accounting Officer, Getz as its Chief Legal Counsel, Tobecksen as Vice President of Finance, and Koenig as Chief Financial Officer. During this same time period, Andersen, Waste Management, Inc.'s ("Waste Management") then-outside auditors, issued unqualified audit opinions on the company's financials.

attached as Exhibit 5); the settlement reached in *In re Waste Management Shareholder Derivative Litigation* (the "Derivative Action," attached as Exhibit 6); and the settlement reached in *Florida State Board of Administration et al. v. Waste Management, Inc. et al.* (the "FSBA Action").[2] That the SEC intends to introduce evidence of some or all of these settlements at trial is made clear by the fact that the OIPs filed against Andersen and Kutsenda are on the SEC's Exhibit List as Exs. 3179 and 3206, as well as by the fact that the SEC has a proposed "Settled Defendants" jury instruction. Several of the Former Defendants, Messrs. Getz, Tobecksen and Hau, as well as two former Andersen Partners, Messrs. Allgyer and Cercavschi, are on the SEC's Witness List. The Court should exclude all of these settlements because they are inadmissible under at least four rules of evidence.

## FACTUAL BACKGROUND

In 1997, the SEC commenced an investigation into Waste Management's financial statements from 1992 through 1996, and into Andersen's auditing of these statements. During the course of its five-year investigation, it took investigative testimony of approximately fifty individuals and gathered tens of thousands of pages of documents from these and other individuals and entities. In contrast, the targets of the SEC's investigation – Mr. Koenig, the Former Defendants, Andersen, and the Andersen Partners – had no right to discovery, and counsel was permitted to attend only his or her particular client's SEC interview. *See* 17 C.F.R. §§ 203.2, 230.122, 240.0-4. None of the attorneys for these parties, including Mr. Koenig's, had any opportunity to interview relevant persons, review any of the documents, or to develop their

---

[2] Collectively, the Consent Decrees between the SEC and the Former Defendants and corresponding final judgments, the Consent Decrees between the SEC and Andersen and the former Andersen Partners, the OIPs, the Class Action settlement, the Derivative Action settlement, and the FSBA Action settlement hereinafter are referred to as the "Settlements"). The settlement reached between Koenig and Waste Management, Inc. in *Koenig v. Waste Management, Inc., et al.*, Case No. 99 C 1560 (N.D. Ill.) (Castillo, J.) (the "SERP case") is the subject of a separate motion *in limine*.

defense by direct, cross, or redirect examination of the witnesses whose testimony was taken by the SEC.

Five years after its investigation began, on March 26, 2002, the SEC filed its Complaint against Koenig and the Former Defendants. On August 9, 2004, Tobecksen entered into a Consent Decree with the SEC and, in exchange for dismissal from the civil suit, consented to the entry of a final judgment imposing civil penalties and other sanctions against him. (*See* Ex. 1E.) In his Consent Decree, which was entered by this Court, Tobecksen – like all of the parties to all of the agreements referenced above – explicitly states that he *neither admits nor denies* the allegations, factual findings, or conclusions made by the SEC. (Ex. 1A-E, each at ¶ 1.) On July 12, 2005, Buntrock, Rooney, Hau and Getz entered into similar Consent Decrees with the SEC. Each of these parties waived findings of fact and conclusions of law as part of their Consent Decrees. (*See* Ex. 1A-D, each at ¶ 5.) On August 26, 2005, this Court entered final judgments against each of the Former Defendants. (*See* Ex. 2A-E.)

Prior to initiating this action, the SEC instituted administrative proceedings against Andersen and the Andersen Partners, alleging that they violated Generally Accepted Accounting Principles ("GAAP"), Generally Accepted Auditing Standards ("GAAS"), and various securities laws and regulations in connection with their Waste Management audits. On June 19, 2001, *without the benefit of any hearing*, Andersen and the Andersen Partners entered into their respective OIPs and also consented to judgment in a federal lawsuit in the District of Columbia. (*See* Ex. 4A-E, each at III.E.) Each OIP contains the following recital:

> Solely for the purpose of these proceedings, and any other proceeding brought by or on behalf of the Commission . . ., and prior to a hearing and without admitting or denying the Commission's findings contained herein . . . Respondent consents to the entry of the findings and the imposition of the remedial sanctions set forth in this [OIP] . . .

3

(*See* Ex. 4A-E, each at ¶ 2.) Not only do Andersen and the Andersen Partners expressly state that they neither admit nor deny the factual "findings" set forth in the OIPs, but those purported "findings of fact" are nothing more than the SEC's one-sided allegations of fact, the accuracy of which was *never* determined by a trier of fact.

While the SEC was beginning its investigation in 1997, various purchasers of Waste Management securities filed putative class actions in the Northern District of Illinois against Waste Management and several of its officers and directors, including Mr. Koenig, for alleged violations of federal securities laws. These actions were consolidated into a single action in this Court in January 1998. This Court entered an order approving the settlement of the Class Action on October 6, 1999. In June 1998, shareholders filed a derivative action in the Delaware Court of Chancery against Waste Management and certain of its officers and directors. The Derivative Action was settled in 2000 and approved by order of the Delaware Chancery Court.

Significantly, not a single party to either the Class Action or the Derivative Action admitted any wrongful conduct. The Class Action Settlement Agreement contained a "no admission of liability" clause barring its offer or receipt into evidence "by any person in…any other actions…whether civil, criminal, or administrative," (Ex. 5 ¶ 23), and the Derivative Action Settlement and related final judgment contain similar provisions. (Ex. 6 ¶ 9.) (The settlement of the Class Action, the Derivative Action, and the FSBA Action collectively shall be referred to as the "Civil Action Settlements.")

These Consent Decrees, OIPs, Civil Action Settlements, and related agreements constitute inadmissible evidence of compromise, are irrelevant, constitute impermissible hearsay, and are also unfairly prejudicial. For all of these reasons, any evidence of, or reference to, the existence or contents of the Consent Decrees, OIPs, and Civil Action Settlement agreements should be excluded from trial in this matter.

## ARGUMENT

I. **THE CIVIL ACTION SETTLEMENTS, CONSENT DECREES, AND OIPS ARE EVIDENCE OF CONDUCT AND STATEMENTS MADE IN COMPROMISE NEGOTIATIONS AND ARE THEREFORE INADMISSIBLE.**

The Court should exclude evidence of or reference to the Consent Decrees, OIPs, and Civil Action Settlements because admission of such evidence would violate both the language and purpose of Rule 408. That rule explicitly states that evidence of "accepting…a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim," and that "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible." Fed. R. Evid. 408. Congress intended Rule 408 to facilitate settlement by allowing a potential litigant to settle (or attempt to settle) a dispute without fear that such a settlement – or things discussed during settlement negotiations – will later be used against him in court. *See* Fed. R. Evid. 408, Advisory Committee Notes. The Advisory Committee also highlights that settlement evidence "is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position." *Id.* Admitting evidence of the Civil Action Settlements, OIPs, Consent Decrees, and statements made during their negotiation – as proof of liability of the Former Defendants, Andersen, the Andersen Partners, or Koenig – would violate Rule 408.

The plain language of Rule 408 bars admission of the Civil Action Settlements, OIPs, and Consent Decrees themselves, and of any conduct or statements made during their negotiation. Indeed, it is because Rule 408's stated purpose is to of encourage settlement that such evidence must be excluded. *See, e.g., Beck v. Cantor, Fitzgerald & Co.,* 621 F. Supp. 1547, 1565 (N.D. Ill. 1985) (excluding all evidence of SEC investigation, SEC opinion, and plaintiff's acquiescence in SEC opinion because it was "irrelevant and immaterial" and because it was

5

barred by Rules 408 and 410); *In re Cenco, Inc. Sec. Litig.*, 601 F. Supp. 336, 337 n.3 (N.D. Ill. 1984) (granting motion to strike references to an SEC release under Rule 408 where the release included only unproven SEC allegations, which was "analogous to a consent decree issued by the SEC as a product of a settlement with Seidman in which Seidman did not admit or deny any of its statements"); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (a consent decree between the SEC and a corporation "is not the result of an actual adjudication of any of the issues. Consequently, it cannot be used as evidence in subsequent litigation between that corporation and another party."); *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) (SEC consent decrees inadmissible as evidence of settlement under Rule 408) (attached as Exhibit 7).

Because the Consent Decrees and OIPs all resulted from extensive negotiations among the parties to those settlements, those agreements necessarily reflect the parties' conduct and statements made during those negotiations. For example, the SEC made factual findings against Andersen and the Andersen Partners pursuant "to the Offer(s)" that these respondents presented to the SEC. (*See* Exs. 4A-E, each at ¶ 2.) The SEC's factual assertions and conclusions in the OIPs must therefore be excluded under the plain language, and purpose, of Rule 408.

## II. EVIDENCE OF THE SETTLEMENTS, CONSENT DECREES, AND OIPS IS PLAINLY IRRELEVANT AND THEREFORE INADMISSIBLE.

The OIPs and Consent Decrees *do not contain admissions of any facts*, much less facts "of consequence" to Koenig's alleged liability as required by Rule 401. *See* Fed. R. Evid. 401 (relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") Such evidence is inadmissible under Federal Rule of Evidence 402. Rather, the parties to the settlements which this Court and the Delaware court expressly approved explicitly *decline* to admit any of the SEC's allegations, factual findings, or

6

conclusions. Thus, the statements of allegations, purported facts and claims contained in the OIPs and Consent Decrees remain bald assertions that have never been tested by the introduction of competing evidence, cross-examination, or impeachment. Inherently, then, they do not shed any light whatsoever on whether Koenig engaged in any of the allegations asserted against him. *See Berke v. Presstek, Inc.*, 188 F.R.D. 179, 180 (D.N.H. 1998) (court struck allegation that defendants consented to an SEC order, which included findings of fact, where defendants neither admitted nor denied the decree's findings).

The Civil Action Settlements likewise contain no admission or denial of any allegations. Neither untested allegations – nor the fact that other parties have chosen to enter into OIPs, Consent Decrees, and settlements – make any "fact that is of consequence to the determination of [this] action more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. As such, the existence and contents of these settlements remain mere adversarial documents containing unproven allegations that have nothing to do with whether Mr. Koenig is liable under the securities laws in this case. They must therefore be excluded under Rule 402.

This Court has consistently recognized that evidence of settlements in related matters (or by former defendants in the same matter) should be excluded from the fact finder's purview because they are irrelevant. In *Cenco*, for example, a securities fraud class action, Judge Aspen found that the defendant corporation could not refer in its summary judgment motion to an SEC release of an already-settled Rule 2(e) proceeding against its former auditor co-defendants. 601 F. Supp. at 337 n.3. In so finding, the court reaffirmed a prior decision to exclude any reference to the settlement, stating that "Cenco has not persuaded us that it seeks admission of the settlement to prove facts other than those tending to show [the co-defendant former auditors'] possible liability to it or to the class. Thus, Cenco has not shown that the ASR falls outside the scope of Rule 408" (citation omitted). *Id.* The court went on to note that, as in this case,

7

> the "underlying 'facts' Cenco seeks to prove are not based on formal findings by the SEC following a hearing on the record. The ASR recites only unproven allegations developed by the SEC's staff."

*Id.*

Similarly, in *Latigo Ventures v. Laventhol & Horwath*, No. 85 C 9584, 1987 WL 26237 (N.D. Ill. Nov. 27, 1987), *aff'd*, 876 F.2d 1322 (7th Cir. 1989) (attached as Exhibit 8), the Court granted defendants' motion to strike the complaint's reference to a consent decree into which the company had entered eight years earlier. *Id.* at *4. In *Latigo*, twelve investors had sued several companies and, separately, eleven officers and directors of yet another company, for securities-law, RICO, and state-law violations. The Court held that the consent decree was irrelevant, either to show a pattern of conduct under RICO or to show defendants' knowledge of securities laws. *Id.* at *4. *See also Chen v. Mayflower Transit, Inc.*, 315 F. Supp. 2d 886, 923 (N.D. Ill. 2004) (striking plaintiff's reference to eleven indictments against other moving companies as irrelevant to the question of whether the defendant moving company similarly engaged in "indictable" activities).

As in *Cenco* and *Latigo Ventures*, the SEC has no proper or legitimate purpose to support use of the Former Defendants' Consent Decrees and other Settlements at this trial. The fact that the Former Defendants decided to settle this action does not "make the existence of any fact that is of consequence to the determination of the action more or less probable...." *See* Fed. R. Evid. 401. Likewise, the fact that Andersen and the Andersen Partners settled with the SEC has nothing to do with Mr. Koenig's potential liability. Put another way, the fact that Andersen, the Andersen Partners and the Former Defendants chose to settle disputed claims with the SEC has no relevance to whether Mr. Koenig violated the federal securities laws. The Settlements and all references to them must be excluded pursuant to Rule 402.

8

### III. THE PURPORTED FACTUAL FINDINGS IN THE OIPS ARE INADMISSIBLE HEARSAY.

The Court should exclude the allegations, factual findings, and conclusions contained in the OIPs for yet another reason: they constitute inadmissible hearsay to which no exception applies.[3] If the SEC attempts to offer such statements, it necessarily would be to prove the truth of the matter asserted – here, that Andersen, the Andersen Partners, and, by implication, Koenig, committed fraudulent acts that violated federal securities laws. *See* Fed. R. Evid. 801(c).

The allegations in the OIPs are nothing more than the SEC's one-sided, unproven assertions, which resulted from its own one-sided investigation, and which none of the settling parties have admitted. They are therefore inherently untrustworthy, and should be barred as hearsay under Rule 802. *See* Fed. R. Evid. 802, Article VIII, Hearsay, Advisory Committee Notes; *see generally, Ohio v. Roberts*, 448 U.S. 56, 73, 100 S. Ct. 2531, 2542-43 (1980) (having opportunity to cross-examine indicates reliability); *see also Cenco*, 601 F. Supp. at 337 n.3 (affirming reasoning of the law of the case that excluded evidence of litigation release as hearsay because it recited only unproven SEC allegations and comments); *Stroble v. New York Mercantile Exchange*, 590 F. Supp. 875, 880 (S.D.N.Y. 1984) (refusing to admit hearsay contained in an ALJ decision because the ALJ "essentially rubber stamped the allegations" of the Commodity Futures Trading Commission's complaint, making the proffered "findings… 'findings' in name only"), *aff'd*, 768 F.2d 22 (2d Cir. 1985). The statements contained in the OIPs have never been put to *any* adversarial challenge, let alone been determined by a trier of fact. Because they are untrustworthy and would be offered for the truth of the matter asserted, they should be excluded under Rule 802.

---

[3] Neither the Former Defendants' Consent Decrees nor the Civil Action Settlements purport to contain factual findings.

9

Rule 803(8)(C) does not change this analysis. That rule provides an exception to the general inadmissible-hearsay rule only for:

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth…in civil actions and proceedings… factual findings resulting from an investigation made pursuant to authority granted by law, *unless the sources of information or other circumstances indicate lack of trustworthiness.*

Fed. R. Evid. 803(8)(C) (emphasis added). The OIPs plainly do not meet the trustworthiness exception – an exception that is strictly interpreted. *Palmer v. Hoffman*, a seminal case referred to in Rule 803(8)'s Advisory Committee Notes, cautions that bias – and, therefore, untrustworthiness – may arise when a report is compiled not to find facts, but rather to bolster the investigator's arguments in anticipation of litigation. 318 U.S. 109, 113-14, 63 S. Ct. 477, 480-81 (1943). Here, the SEC gathered its so-called "facts" and compiled them into the OIPs when it was anticipating settlements with Andersen and the Andersen Partners and litigation against the Former Defendants and Koenig.

Similarly, in *Wetherill v. University of Chicago*, the plaintiff, suing for injuries allegedly caused by her mother's ingestion during pregnancy of the drug "DES," moved *in limine*, pursuant to Rules 803(8)(B) and 803(8)(C), for the admission of a government agency report on the effects of DES. 518 F. Supp. 1387 (N.D. Ill. 1981). In denying the motion, this Court highlighted that the report was untrustworthy, particularly because some of the staff that consulted on the report were "interested parties" who had "been actively involved in DES-related litigation." *Id.* at 1390-91. The Court therefore held that "the [r]eport is not the sort of neutral fact-finding investigation conducted by a governmental agency that is contemplated by Rule 803(8)(C)." *Id.* at 1391.

Similarly, in *Stroble*, the court rejected defendants' argument that the CFTC's findings fell within Rule 803(8)(C) because the ALJ's decision lacked sufficient indicia of

trustworthiness. 590 F. Supp. at 878-79. In that case, the defendants contended that some of the "factual findings" contained in the ALJ's decision awarding default judgment to the CFTC should be admitted as newly-discovered evidence that actually supported their defense. The ALJ, however, had simply adopted the allegations in the CFTC's complaint as his "findings of fact." *Id.* at 879. Because these "findings" did "not constitute a reasoned result based on an impartial weighing of evidence and the operation of a disinterested mind," they were not reliable and not admissible under Rule 803(8)(C). *Id.* at 880; *see also Donald v. Rast*, 927 F.2d 379, 381 (8th Cir. 1991) (in affirming denial of defendant's motion for new trial in Section 1983 action alleging wrongful administration of breathalyzer test, court upholds exclusion of ALJ's findings and order rescinding suspension of defendant's drivers license because findings obtained in *ex parte* administrative proceedings are not trustworthy). Neither are the OIPs in this matter.

The Advisory Committee Notes to Rule 803(8) emphasize that "[t]he formulation of an approach which would give appropriate weight to all possible factors in every situation is an obvious impossibility." *See* Fed. R. Evid. 803(8), Advisory Committee Notes. This situation, however, is clear: the OIPs here are merely the assertions of a litigant in this case. Admitting the SEC's allegations into evidence would be the equivalent of admitting its Complaint as evidence in this matter, or of allowing the SEC's trial counsel to testify about their views of the evidence as proof of Mr. Koenig's liability. Because Rule 803(8)(C) is only meant to make an exception for the admission of *trustworthy* reports, the OIPs should not be admitted.

### IV. THE DANGER OF UNFAIR PREJUDICE SUBSTANTIALLY OUTWEIGHS THE PROBATIVE VALUE OF THE EVIDENCE OF THE SETTLEMENTS, CONSENT DECREES, AND OIPS UNDER RULE 403.

Even if evidence of or reference to the Settlements was at all relevant to the determination of Koenig's liability, which it is not, the Court should still bar their admission under Rule 403. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167-68, 109 S. Ct. 439, 449

(1988) ("the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing" material that may otherwise be admissible); *Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 153-54 (7th Cir. 1985) (district court's Rule 403 determination exists separate and apart from its determination under other Federal Rules of Evidence).[4] Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The Advisory Committee Notes define prejudice as an "undue tendency to suggest decision on an improper basis...." Fed. R. Evid. 403, Advisory Committee Notes. That the risk of such prejudice is extraordinarily high here is crystal clear.

*First*, reference to or evidence of the Consent Decrees, OIPs, and Settlements would likely cause the jury to infer that those who settled were liable, and therefore that Mr. Koenig is liable. Jurors may be particularly susceptible to this inference in light of the monetary payments made by the settling parties under the terms of the Consent Decrees, OIPs, and Civil Action Settlements. If such evidence was introduced, the jury would likely wonder why companies and individuals would consent to judgments against them, much less pay large sums of money as a result, unless they did something wrong. *See Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (consent decree from a prior SEC enforcement action, which "involved no finding of culpability and no judgment of wrongdoing," was unduly prejudicial and inadmissible because of the risk of improper implication of wrongdoing). This is exactly the kind of improper basis for liability precluded by Rule 403. *See* Fed. R. Evid. 403, Advisory Committee Notes.

*Second*, jurors might then impute liability for alleged, untested, unproven, and contested bad acts – to which no settling party admitted – to Mr. Koenig under the following theory.

---

[4] While the Supreme Court in *Beech Aircraft* held that "portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion," the Court did not analyze the trustworthiness of the investigative report in question in that case. *Id.* at 167, n.11, 170, 109 S. Ct. at 449 n.11, 450.

Koenig worked with the Former Defendants and with some of the Andersen Partners who audited Waste Management's financial statements. If all of them, and Waste Management and Arthur Andersen, paid money to the SEC, the jury may very well think, they must have done something wrong – and so must have Koenig. No doubt that is exactly the impermissible inference the SEC wants the jury to draw.

The risk of this kind of "guilt-by-association" has long been recognized and prohibited by this Court. For example, in *McGhee v. Joutras*, No. 94 C 7052, 1996 WL 706919 (N.D. Ill. Dec. 5, 1996) (attached as Exhibit 9), plaintiff McGhee had sold Dorn, the remaining defendant left in the case, 35,000 shares of company stock. *Id.* at *1. The question presented at trial was whether Joutras, an insider with whom McGhee had previously settled claims, possessed material information that he then disclosed to Dorn, but not McGhee, at the time of McGhee's stock sale to Dorn. *Id.* Dorn moved *in limine* to exclude evidence of Joutras' SEC consent decree and Joutras' settlement with the plaintiff because such admission would be prejudicial to Dorn. *Id.* at *5. The court agreed, stating that all such evidence, "*none* of which implicates [Dorn, the remaining defendant], would be highly prejudicial to [Dorn's]...defense." *Id.* (emphasis in original). In granting Dorn's motion, the court emphasized that the only reason to present evidence of the consent decree at trial would be an "*impermissible guilt-by-association premise.*" *Id.* (emphasis added). Similarly, here, allowing the reference to, or evidence of, settlements by other parties into evidence would be tantamount to inviting the jury not to pay attention to, or consider, the admissible evidence in this case.

*Third*, the SEC will suffer no prejudice if this evidence is excluded. Through extensive discovery in this matter, the SEC has had ample opportunity to explore whatever allegations, factual findings, opinions, and conclusions that it developed during the course of its investigations. The jury in this case will have before it all of the admissible evidence that the

13

SEC proffers from this discovery process, but will benefit from that evidence being tested and developed through Koenig's participation in direct, cross, and redirect examination, and his presentation of his own case. The jury can conclude for itself what roles Andersen, the Andersen Partners, and the Former Defendants played in the financials at issue *without* considering irrelevant, highly prejudicial settlement materials. *See Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 624-25 (7th Cir. 2003) (no prejudice to party offering excluded agency determination when party was permitted to develop testimony at trial on matters contained within that determination); *Tulloss*, 776 F.2d at 154 (district court did not abuse its discretion by refusing to consider EEOC determination where it was "not contended that the evidentiary material available to the EEOC was not also available to the district court."). Because excluding evidence of the settlements poses no risk of prejudice to the SEC, and because the danger of unfair prejudice so heavily outweighs the evidence's probative value, such evidence should be barred under Rule 403.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant James E. Koenig respectfully requests that the Court exclude at trial evidence of or reference to the Consent Decrees, OIPs, and Civil Action Settlements, and related final judgments described above, and grant him such other relief as is just and appropriate in the circumstances.

Dated: March 3, 2006

                        Respectfully submitted,

                        JAMES E. KOENIG

By:   s/ Matthew J. O'Hara
       Sarah R. Wolff (Bar No. 3123733)
       Jonathan S. Quinn (Bar No. 6200495)
       Matthew J. O'Hara (Bar No. 6237795)
       Christopher R. Clark (Bar No. 6236859)
       Sachnoff & Weaver, Ltd.
       10 South Wacker Drive
       Chicago, IL 60606
       (312) 207-1000
       mohara@sachnoff.com

       *Attorneys for Defendant James E. Koenig*

804814v4

## CERTIFICATE OF SERVICE

I, Matthew J. O'Hara, state that on March 3, 2006, I electronically filed the foregoing KOENIG'S MOTION *IN LIMINE* (NO. 1) TO EXCLUDE EVIDENCE OF OR REFERENCE TO SETTLEMENTS with the Clerk of the Court using the ECF system which will send notification of such filings to the following:

John D. Worland, Jr., Esq.
Securities and Exchange Commission
450 Fifth Street, N.W.
Mail Stop 9-11
Washington, DC 20549-0808
worlandj@sec.gov

**Counsel for Plaintiff**

John E. Birkenheier, Esq.
United States Securities and Exchange Commission
175 W. Jackson Boulevard
Suite 900
Chicago, IL 60604
birkenheierg@sec.gov

**Counsel for Plaintiff**

s/ Matthew J. O'Hara
Sarah R. Wolff (Bar No. 3123733)
Jonathan S. Quinn (Bar No. 6200495)
Matthew J. O'Hara (Bar No. 6237795)
Christopher R. Clark (Bar No. 6236859)
Sachnoff & Weaver, Ltd.
10 South Wacker Drive
Chicago, IL 60606
(312) 207-1000
mohara@sachnoff.com
*Attorneys for Defendant James E. Koenig*