**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 02 C 2180 |
| | ) | |
| JAMES E. KOENIG, | ) | Judge Wayne R. Andersen |
| | ) | |
| Defendant. | ) | |

## JURY INSTRUCTIONS AND VERDICT FORM SUBMITTED TO THE JURY

Defendant James E. Koenig, by his attorneys, respectfully submits the attached

jury instructions and verdict form, which the Court submitted to the jury on June 28,

2006.

Dated: June 29, 2006

JAMES E. KOENIG

By:  *s/Sarah R. Wolff*

Sarah R. Wolff  (Bar No. 3123733)
Jonathan S. Quinn (Bar No. 6200495)
Matthew J. O'Hara (Bar No.6237795)
Christopher R. Clark (Bar No. 6236859)
10 South Wacker Drive
Chicago, IL  60606
(312) 207-1000
swolff@sachnoff.com
*Attorneys for Defendant James E. Koenig*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | | |
| | Plaintiff, ) | No. 02 C 2180 |
| v. | ) | Honorable Wayne R. Andersen |
| JAMES E. KOENIG, | ) | |
| | Defendant. ) | |

**JURY INSTRUCTIONS**

## FUNCTIONS OF THE COURT AND THE JURY

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. In deciding your verdict, you must not allow sympathy, bias, prejudice, fear or public opinion to influence you.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

**Instruction No. 1**

## ALL LITIGANTS EQUAL BEFORE THE LAW

The fact that a governmental entity, the Securities and Exchange Commission, is the plaintiff in this case must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and are to be dealt with as equals in a court of justice.

**Instruction No. 2**

## EVIDENCE

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true.

**Instruction No. 3**

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by video tape. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

**Instruction No. 4**

## WHAT IS NOT EVIDENCE

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. The purpose of these is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

**Instruction No. 5**

## NOTE-TAKING

Any notes you have taken during this trial are only aids to your memory.

The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

**Instruction No. 6**

**CONSIDERATION OF ALL EVIDENCE REGARDLESS OF WHO PRODUCED**

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

**Instruction No. 7**

## LIMITED PURPOSE OF EVIDENCE

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

**Instruction No. 8**

## WEIGHING THE EVIDENCE

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

**Instruction No. 9**

## DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, <u>direct evidence</u> that it is raining is testimony from a the witness who says, "I was outside a minute ago and I saw it raining." <u>Circumstantial evidence</u> that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

**Instruction No. 10**

## TESTIMONY OF WITNESSES (DECIDING WHAT TO BELIEVE)

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;
- the witness's memory;
- any interest, bias, or prejudice the witness may have;
- the witness's intelligence;
- the manner of the witness while testifying;
- and the reasonableness of the witness's testimony in light of all the evidence in the case.

**Instruction No. 11**

## LAWYER INTERVIEWING WITNESS; RETENTION OF LITIGATION CONSULTANTS AND EXPERTS

It is proper for a lawyer to meet with any witness in preparation for trial.

It is also proper for an attorney, party, or witness to retain, and consult with, experts and litigation consultants in preparation for trial.

**Instruction No. 12**

## NUMBER OF WITNESSES

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

**Instruction No. 13**

## PRIOR INCONSISTENT STATEMENTS OR ACTS

You may consider statements given by the SEC, James Koenig, or a witness under oath before trial as evidence of the truth of what the witness said in the earlier statements, as well as in deciding what weight to give that witness's testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with the witness's testimony here in court, you may consider the earlier statement or conduct only in deciding whether the witness's testimony here in court was true and what weight to give to that testimony here in court.

In considering prior inconsistent statements or conduct, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

**Instruction No. 14**

## IMPEACHMENT OF A WITNESS

A witness may be discredited or "impeached" by contradictory evidence, by, among other things, a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something that is inconsistent with the witness's testimony.

If you believe that any witness has been impeached, then you must determine whether to believe the witness's testimony in whole, in part, or not at all, and how much weight to give to that testimony.

**Instruction No. 15**

## ABSENCE OF EVIDENCE

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

**Instruction No. 16**

## EXPERT WITNESSES

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witnesses' qualifications, and all of the other evidence in the case.

**Instruction No. 17**

## DEMONSTRATIVE EXHIBITS

Certain demonstrative exhibits have been shown to you, such as, for example, pictures, diagrams, and charts, which took the form, in certain instances, of boards placed on easels and slides projected on the screen. Those are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

**Instruction No. 18**

## NO NEED TO CONSIDER REMEDIES

Your job is to determine whether Mr. Koenig is liable for violating the federal securities laws. It will be my job to decide what relief, if any, should be awarded against him. That will be my job if you find him liable. In considering whether he is or is not liable, you should not speculate as to what relief I might award.

**Instruction No. 19**

## BURDEN OF PROOF

When I say the "Securities and Exchange Commission" or the "SEC" or the "plaintiff" must prove something by "a preponderance of the evidence," or when I use the expression "if you find" or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

**Instruction No. 20**

## SECTION 10(B) - FALSE OR MISLEADING STATEMENTS OR OMISSIONS - ELEMENTS

In order to meet its burden of proving that Mr. Koenig violated Section 10(b) or Rule 10b-5, the SEC must establish by a preponderance of the evidence each of the following elements:

First, that Mr. Koenig did any one or more of the following:

(1) employed a device, scheme, or artifice to defraud,

(2) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or

(3) engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

Second, that Mr. Koenig acted with intent to defraud or with reckless disregard for the truth.

Third, that Mr. Koenig's conduct was in connection with the purchase or sale of a security.

Fourth, that Mr. Koenig used or caused to be used the mails or means and instrumentalities of interstate commerce.

If you find that the SEC has proven all of the above elements by a preponderance of the evidence, then you must find Mr. Koenig liable under Section 10(b) and Rule 10b-5. If you find that the SEC has failed to prove any of these elements by a preponderance, then you must find Mr. Koenig not liable under Section 10(b) and Rule 10b-5.

I will explain each of these concepts in more detail.

**Instruction No. 21**

<u>**FIRST ELEMENT:   FRAUDULENT ACT**</u>

The first element that the SEC must prove by a preponderance of the evidence is that in connection with the purchase or sale of Waste Management securities, Mr. Koenig did any one or more of the following:

(1) employed a device, scheme, or artifice to defraud,

(2) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or

(3) engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

A device, scheme or artifice to defraud is a plan for the accomplishment of any objective. The law which Mr. Koenig is alleged to have violated prohibits all kinds of manipulative and deceptive acts. Any device, scheme, or artifice to defraud, or act, practice, or course of business which operated as a fraud or deceit must be material.

The SEC need not prove that Mr. Koenig personally made the misrepresentation or that he omitted the material fact. It is sufficient if the SEC establishes that Mr. Koenig caused the statement to be made or the fact to be omitted. It is not necessary for you to find that Mr. Koenig was the actual seller or purchaser of the securities.

With regard to the alleged misrepresentations and omissions, you must determine whether the statement was true or false when it was made, and, in the case of alleged omissions, whether the omission was misleading at the time the omission occurred.

**Instruction No. 22**

## MATERIALITY

A fact stated or omitted is "material" if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision and would view it as having significantly altered the total mix of information made available.

Whether a fact stated or omitted is material is determined in light of the circumstances existing at the time the statement or omission occurred.

**Instruction No. 23**

## SECOND ELEMENT:  STATE OF MIND

Another element the plaintiff must establish by a preponderance of the evidence to prevail on a Section 10(b) claim is that Mr. Koenig knowingly participated in the scheme to defraud with intent to defraud or with reckless disregard for the truth.

Knowingly means to act intentionally and deliberately, rather than mistakenly or inadvertently.

Intent to defraud in the context of the securities laws means to act knowingly and with the intent to deceive.

Reckless conduct includes not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, that presents a danger of misleading buyers or sellers of securities which is either known to Mr. Koenig or is so obvious that he must have been aware of it.

**Instruction No. 24**

<u>THIRD ELEMENT:   IN CONNECTION WITH THE SALE OR PURCHASE OF A SECURITY</u>

Section 10(b) requires that Mr. Koenig's conduct be "in connection with" the sale or purchase of a security.  Although you must find that there was a purchase or sale of securities in this case, you need not find that Mr. Koenig actually participated in any securities transaction if Mr. Koenig was engaged in fraudulent conduct that was "in connection with" a purchase or sale.  The "in connection with" requirement is satisfied if you find that there was any connection or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the sale or purchase of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

**Instruction No. 25**

## FOURTH ELEMENT:   INTERSTATE COMMERCE

Plaintiff must also prove that Mr. Koenig knowingly used, or caused to be used, the means or instrumentalities of interstate commerce, or of the mails, in furtherance of the scheme to defraud or fraudulent conduct.

It is not necessary that Mr. Koenig be directly or personally involved in any mailing or telephone calls.  If he was an active participant in the scheme and took steps or engaged in conduct which he knew or could reasonably foresee would naturally and probably result in the use of the mails or interstate wires, then you may find that he caused the mails or telephones to be used.

When one does an act with the knowledge that the use of interstate means for communication or of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he causes such means to be used.

Nor is it necessary that the items that went through interstate commerce or the mails contain the fraudulent material, or anything objectionable.  The material sent may be entirely innocent.  The use of interstate means or the mails need not be central to the execution of the scheme, and it may even be incidental to it.  All that is required is that the use of the mails or interstate means bear some relation to the object of the scheme or fraudulent conduct.

In fact, the actual sale or purchase need not be accompanied or accomplished by the use of interstate means or of the mails, so long as Mr. Koenig is engaged in actions that are part of a fraudulent scheme.

**Instruction No. 26**

## SECTION 17(A) OF THE SECURITIES ACT

The SEC alleges that James Koenig committed fraud in the sale or offer of securities issued by Waste Management, Inc. in violation of Section 17(a) of the Securities Act of 1933.

In order for you to find that Mr. Koenig violated Section 17(a), the SEC must prove the following by a preponderance of the evidence:

That, in the offer or sale of securities, Mr.Koenig:

(1) employed any device, scheme, or artifice to defraud, or

(2) obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The elements of a violation of Section 17(a) of the Securities Act are similar to those under Section 10(b) of the Exchange Act. Thus, the definition of "material" under Section 17(a) is the same as under Section 10(b), defined earlier in these instructions. There are two important ways in which Section 17(a) differs from Section 10(b) and Rule 10b-5, however.

First, Section 17(a) only addresses conduct "in the offer or sale of securities." Section 10(b) and Rule 10b-5, in contrast, address conduct "in connection with the purchase or sale of securities."

Second, the state of mind required for a violation of subsection (2) or (3) of Section 17(a) differs from that of subsection (1) of Section 17(a). To prove a violation of Section 17(a)(2) or 17(a)(3), the SEC must prove by a preponderance of the evidence that Mr. Koenig acted with "negligence." Negligence is defined in the following instruction.

To prove a violation of Section 17(a)(1), however, the SEC must still prove that Mr. Koenig acted with an intent to defraud or with reckless disregard for the truth, as defined earlier in these instructions concerning Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

**Instruction No. 27**

## SECTION 17(A)(2)-(3) OF THE SECURITIES ACT (CONT.)

To find a violation of 17(a)(2) or 17(a)(3), you must find that Mr. Koenig acted with negligence. Negligence is the doing of some act a reasonably prudent person would not do, or the failure to do something a reasonably prudent person would do, when prompted by considerations that ordinarily regulate the conduct of human affairs.

**Instruction No. 28**

## AIDING AND ABETTING -- SECTION 10(B) AND RULE 10B-5

The SEC claims that Mr. Koenig also violated Section 10(b) and Rule 10b-5 of the Exchange Act by aiding and abetting violations of those provisions committed by Waste Management, Inc. To prove its claim of aiding and abetting, the SEC must establish each of the following by a preponderance of the evidence:

(1)     Waste Management committed one or more violations of Section 10(b) and Rule 10b-5;

(2)     Mr. Koenig provided substantial assistance to Waste Management in violating those provisions; and

(3)     Mr. Koenig knew, or was reckless in not knowing, of Waste Management's violation and of his role in furthering the violation.

I have previously defined for you the meaning of "reckless."

Inaction may be a form of "substantial assistance" if you find that the silence of the defendant was intended to aid Waste Management in committing the violations.

A corporation is a legal entity that can act only through persons who are its agents. If you find that Waste Management violated Section 10(b) and Rule 10b-5, only then should you consider whether Mr. Koenig played a role in that violation.

If you find that the SEC has proven all of the above elements by a preponderance of the evidence, then you must find Mr. Koenig liable for aiding and abetting a violation of Section 10(b) and Rule 10b-5. If you find that the SEC has failed to prove any of these elements by a preponderance, then you must find Mr. Koenig not liable for aiding and abetting a violation of Section 10(b) and Rule 10b-5.

**Instruction No. 29**

## AIDING AND ABETTING -- SECTION 17(A)

The SEC claims that Mr. Koenig violated Section 17(a) of the Securities Act by aiding and abetting violations of those provisions committed by Waste Management, Inc. To prove its claim of aiding and abetting, the SEC must establish each of the following by a preponderance of the evidence:

(1)     Waste Management committed one or more violations of Section 17(a);

(2)     Mr. Koenig provided substantial assistance to Waste Management in violating those provisions; and

(3)     Mr. Koenig knew, or was reckless in not knowing, of Waste Management's violation and of his role in furthering the violation.

I previously defined for you the meaning of "reckless."

Inaction may be a form of "substantial assistance" if you find that the silence of the defendant was intended to aid Waste Management in committing the violations.

A corporation is a legal entity that can act only through persons who are its agents. If you find that Waste Management violated Section 17(a), only then should you consider whether Mr. Koenig played a role in that violation.

If you find that the SEC has proven all of the above elements by a preponderance of the evidence, then you must find Mr. Koenig liable for aiding and abetting a violation of Section 17(a). If you find that the SEC has failed to prove any of these elements by a preponderance, then you must find Mr. Koenig not liable for aiding and abetting a violation of Section 17(a).

**Instruction No. 30**

### AIDING AND ABETTING – SECTION 13(A) – FILING FALSE PERIODIC REPORTS

The SEC claims that Mr. Koenig aided and abetted Waste Management's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13, by filing materially false reports with the SEC.

Companies must file periodic reports with the SEC. Section 13(a) and Rules 13a-1 and 13a-13 require that issuers make those reports factually accurate and not omit material information that would otherwise make the information in the reports not misleading. Rule 12b-20 provides that in addition to the information expressly required to be included in a statement or report, the issuer shall add such further material information as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading. I have defined "material" earlier in these instructions.

To prove its claim of aiding and abetting, the SEC must establish each of the following by a preponderance of the evidence:

(1) Waste Management committed one or more violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-13;

(2) Mr. Koenig provided substantial assistance to Waste Management in violating those provisions; and

(3) Mr. Koenig knew, or was reckless in not knowing, of Waste Management's violation and of his role in furthering the violations.

I previously defined for you the meaning of "reckless."

Inaction may be a form of "substantial assistance" if you find that the silence of the defendant was intended to aid Waste Management in committing the violations.

A corporation is a legal entity that can act only through persons who are its agents. If you find that Waste Management violated Section 13(a) and Rules 12b-20, 13a-1, and 13a-13, only then should you consider whether Mr. Koenig played a role in that violation.

If you find that the SEC has proven all of the above elements by a preponderance of the evidence, then you must find Mr. Koenig liable for aiding and abetting a violation of Section 13(a) and Rules 12b-20, 13a-1, and 13a-13. If you find that the SEC has failed to prove any of these elements by a preponderance, then you must find Mr. Koenig not liable for aiding and abetting a violation of Section 13(a) and Rules 12b-20, 13a-1, and 13a-13.

**Instruction No. 31**

**AIDING AND ABETTING – SECTION 13(B)(2)(A) – FALSIFICATION OF BOOKS AND RECORDS**

The SEC claims that Mr. Koenig aided and abetted Waste Management's violations of Section 13(b)(2)(A) of the Exchange Act by falsifying the books and records of Waste Management.

Section 13(b)(2)(A) requires that companies subject to the Exchange Act's reporting requirements make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company. The Exchange Act defines the term "records" to mean accounts, correspondence, memorandums, tapes, discs, papers, books, and other documents or transcribed information of any type, whether expressed in ordinary or machine language. "Reasonable detail" means the level of detail as would satisfy prudent officials in the conduct of their own affairs.

To prove its claim of aiding and abetting, the SEC must establish each of the following by a preponderance of the evidence:

(1) Waste Management committed one or more violations of Section 13(b)(2)(A) of the Exchange Act;

(2) Mr. Koenig provided substantial assistance to Waste Management in violating that section; and

(3) Mr. Koenig knew, or was reckless in not knowing, of Waste Management's violation and of his role in furthering the violation.

I previously defined for you the meaning of "reckless."

Inaction may be a form of "substantial assistance" if you find that the silence of the defendant was intended to aid Waste Management in committing the violations.

A corporation is a legal entity that can act only through persons who are its agents. If you find that Waste Management violated Section 13(b)(2)(A), only then should you consider whether Mr. Koenig played a role in that violation.

If you find that the SEC has proven all of the above elements by a preponderance of the evidence, then you must find Mr. Koenig liable for aiding and abetting a violation of Section 13(b)(2)(A). If you find that the SEC has failed to prove any of these elements by a preponderance, then you must find Mr. Koenig not liable for aiding and abetting a violation of Section 13(b)(2)(A).

**Instruction No. 32**

## RULE 13B2-1 OF THE EXCHANGE ACT

The SEC claims that Mr. Koenig violated Rule 13b2-1 of the Exchange Act. The SEC must show by a preponderance of the evidence that Mr. Koenig, directly or indirectly, falsified, or caused to be falsified, any book, record, or account of Waste Management.

As I previously instructed you, Section 13(b)(2)(A) requires that companies subject to the Exchange Act's reporting requirements make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company. The Exchange Act defines the term "records" to mean accounts, correspondence, memorandums, tapes, discs, papers, books, and other documents or transcribed information of any type, whether expressed in ordinary or machine language. "Reasonable detail" means the level of detail as would satisfy prudent officials in the conduct of their own affairs.

Under Rule 13b2-1, books, records, and accounts must have been made and kept, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of Waste Management.

**Instruction No. 33**

## RULE 13B2-2 OF THE EXCHANGE ACT – LYING TO AUDITORS

The SEC alleges that James Koenig lied to the auditors of Waste Management in violation of Rule 13b2-2 of the Exchange Act.

It is a violation of Rule 13b2-2 for any director or officer of Waste Management, directly or indirectly, to make, or cause to be made, a materially false or misleading statement, or to omit to state, or cause another person to omit to state, any material fact necessary in order to make statements made, in light of the circumstances under which they were made, not misleading to any auditor in connection with an audit, review or examination of Waste Management's financial statements required to be made pursuant to the rules and regulations of the Exchange Act, or the preparation or filing of any document or report required to be filed with the SEC.

I have previously instructed you on what is a false or misleading statement or omission, and what material means.

**Instruction No. 34**

## SUMMARIES

Exhibits 3210, 4294, 4295, 4296, and 4297 are summaries of documents, records, or books.  It is up to you to decide if each of these summaries is accurate.  You should consider these summaries just like all of the other evidence in the case.

**Instruction No. 35**

## LIMITED PURPOSE OF EVIDENCE

The following exhibits, which were admitted through the videotaped testimony of Robert "Steve" Miller, should be considered only for the limited purpose of showing Mr. Miller's state of mind, and should not be considered for the truth of the matters discussed therein: 1230, 1267, 1277, 1278, 1279, 1280, 1281, 1282, 1283, 1286, 1287, 1288, 1289, 1538, 1540, and 1549.

The following exhibits, which were admitted during the testimony of Jeffrey Stahl, should be considered only for the limited purposes of (1) showing Arthur Andersen's state of mind, and (2) proving that the documents exist, and should not be considered for the truth of the matters discussed therein: 627, 889, 890, 956, 967, 1087, 1088, and 1091.

Exhibit 954, which was admitted during the testimony of Wanda Wallace, should be considered only for the limited purpose of determining what Dr. Wallace used to reach her opinions in this matter, and should not be considered for the truth of the matters discussed therein.

Exhibits 82, 354, 860, 863, 865, and 870, which were admitted during the videotaped testimony on Ronald LeMay, should be considered only for the limited purpose of understanding what was in Mr. LeMay's mind, and should not be considered for the truth of the matters discussed therein.

Exhibit 181, which was admitted during the testimony of James Koenig, should be considered only for the limited purposes of showing that (1) Mr. Koenig received it, and (2) Mr. Koenig had notice of it, but should not be considered for the truth of the matters discussed therein.

Exhibit 344, which was admitted during the testimony of Herbert Getz, should be considered only for the limited purpose of showing what was in Mr. Getz's mind after he left the July 1997 meeting with Mr. Sanford, and should not be considered for the truth of the matters discussed therein.

Exhibit 488, which was admitted during the videotaped testimony of John Riley, should be considered only for the limited purpose of showing what was in Mr. Riley's mind when he reached the conclusions he reached, and should not be considered for the truth of the matters discussed therein.

Exhibit 1228, which was admitted during the testimony of Ronald Skwarek, should be considered only for the limited purpose of explaining Arthur Andersen's state of mind and Skwarek's state of mind and the position of the Company at that time.

Exhibits 4176, 4201, 4204, 4215, 4221, 4236, 4238, 4240, 4241, 4242, 4246, 4250, 4253, 4254, and 4258, which were admitted during the testimony of Kenneth McGraw, should be considered only for the limited purpose of determining what Mr.

McGraw used to reach his opinions in this matter, and should not be considered for the truth of the matters discussed therein.

Exhibits 2071, 2072, and 3218, which were admitted at the end of the trial, should be considered only for the limited purpose of showing what was being said in the market at the time each was published, and should not be considered for the truth of the matters discussed therein.

Exhibits 3216 and 3217, which were admitted at the end of the trial, should be considered only for the limited purpose of showing what information was available to the public at the time each was published, and should not be considered for the truth of the matters discussed therein.

**Instruction No. 36**

## SELECTION OF FOREPERSON; FORMS OF VERDICT

Upon retiring to the jury room, you must select a foreperson. The foreperson will preside over your deliberations and will be your representative here in Court.

Forms of verdict have been prepared for you.

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your foreperson will fill in and date the appropriate form, and all of you will sign it.

**Instruction No. 37**

## COMMUNICATION WITH THE COURT

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

**Instruction No. 38**

## DISAGREEMENT AMONG JURORS

The verdict must represent the considered judgment of each juror. Your verdict must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to re-examine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair consideration to all the evidence and deliberate with the goal of reaching a verdict which is consistent with the individual judgment of each juror. You are impartial judges of the facts.

**Instruction No. 39**

## <u>VERDICT FORM</u>

### A. Section 10(b) of the Securities Exchange Act of 1934 and
### Rule 10b-5 Promulgated Thereunder
### SECURITIES FRAUD

1. Did James E. Koenig violate Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder?


**Yes:**_____        **No:**_____


If your answer to Question 1 is "Yes," please indicate below the period or periods in which James E. Koenig violated Section 10(b) and Rule 10b-5 by marking "yes" next to those periods, or "no" next to the period or periods in which there was not a violation. Otherwise, please proceed to Question 2 on the next page.


| | | |
|---|---|---|
| (a) 1992 | **Yes:**_____ | **No:**_____ |
| (b) 1993 | **Yes:**_____ | **No:**_____ |
| (c) 1994 | **Yes:**_____ | **No:**_____ |
| (d) 1995 | **Yes:**_____ | **No:**_____ |
| (e) 1996 | **Yes:**_____ | **No:**_____ |

1

## B. Section 17(a)(1) of the Securities Act of 1933
## SECURITIES FRAUD

2. Did James E. Koenig violate Section 17(a)(1) of the Securities Act of 1933?


**Yes:**_____ **No:**_____


If your answer to Question 2 is "Yes," please indicate below the period or periods in which James E. Koenig violated Section 17(a)(1) by marking "yes" next to those periods, or "no" next to the period or periods in which there was not a violation. Otherwise, please proceed to Question 3 on the next page.


| | | |
|---|---|---|
| (a) 1992 | **Yes:**_____ | **No:**_____ |
| (b) 1993 | **Yes:**_____ | **No:**_____ |
| (c) 1994 | **Yes:**_____ | **No:**_____ |
| (d) 1995 | **Yes:**_____ | **No:**_____ |
| (e) 1996 | **Yes:**_____ | **No:**_____ |

2

## C.  Section 17(a)(2) of the Securities Act of 1933
## SECURITIES FRAUD

3.　　Did James E. Koenig violate Section 17(a)(2) of the Securities Act of 1933?


Yes:_____　　　No:_____


If your answer to Question 3 is "Yes," please indicate below the period or periods in which James E. Koenig violated Section 17(a)(2) by marking "yes" next to those periods, or "no" next to the period or periods in which there was not a violation.  Otherwise, please proceed to Question 4 on the next page.


| | | |
|---|---|---|
| (a) 1992 | Yes:_____ | No:_____ |
| (b) 1993 | Yes:_____ | No:_____ |
| (c) 1994 | Yes:_____ | No:_____ |
| (d) 1995 | Yes:_____ | No:_____ |
| (e) 1996 | Yes:_____ | No:_____ |

3

### D. Section 17(a)(3) of the Securities Act of 1933
### SECURITIES FRAUD

4.  Did James E. Koenig violate Section 17(a)(3) of the Securities Act of 1933?

Yes:_____     No:_____

If your answer to Question 4 is "Yes," please indicate below the period or periods in which James E. Koenig violated Section 17(a)(3) by marking "yes" next to those periods, or "no" next to the period or periods in which there was not a violation. Otherwise, please proceed to Question 5 on the next page.

| | | |
|---|---|---|
| (a) 1992 | Yes:_____ | No:_____ |
| (b) 1993 | Yes:_____ | No:_____ |
| (c) 1994 | Yes:_____ | No:_____ |
| (d) 1995 | Yes:_____ | No:_____ |
| (e) 1996 | Yes:_____ | No:_____ |

4

**E.  Aiding and Abetting Section 10(b) of the Securities Exchange Act of 1934 and
Rule 10b-5 Promulgated Thereunder
AIDING AND ABETTING COMPANY'S SECURITIES FRAUD**

5.  Did James E. Koenig aid and abet one or more violations by Waste Management, Inc. of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder?

**Yes:_____          No:_____**

If your answer to Question 5 is "Yes," please indicate below the period or periods in which James E. Koenig aided and abetted Waste Management's violation of Section 10(b) and Rule 10b-5 by marking "yes" next to those periods, or "no" next to the period or periods in which there was no aiding and abetting of a violation.  Otherwise, please proceed to Question 6 on the next page.

(a) 1992                              **Yes:_____    No:_____**

(b) 1993                              **Yes:_____    No:_____**

(c) 1994                              **Yes:_____    No:_____**

(d) 1995                              **Yes:_____    No:_____**

(e) 1996                              **Yes:_____    No:_____**

5

### F. Aiding and Abetting Sections 17(a) of the Securities Act of 1933
### AIDING AND ABETTING COMPANY'S SECURITIES FRAUD

6. Did James E. Koenig aid and abet one or more violations by Waste Management, Inc. of Section 17(a) of the Securities Act of 1933?

**Yes:_____          No:_____**

If your answer to Question 6 is "Yes," please indicate below the period or periods in which James E. Koenig aided and abetted Waste Management's violation of Section 17(a) by marking "yes" next to those periods, or "no" next to the period or period in which there was no aiding and abetting of a violation. Otherwise, please proceed to Question 7 on the next page.

| | | |
|---|---|---|
| (a) 1992 | **Yes:_____** | **No:_____** |
| (b) 1993 | **Yes:_____** | **No:_____** |
| (c) 1994 | **Yes:_____** | **No:_____** |
| (d) 1995 | **Yes:_____** | **No:_____** |
| (e) 1996 | **Yes:_____** | **No:_____** |

6

**G. Aiding and Abetting Section 13(a) of the Securities Exchange Act of 1934 and Rules
12b-20, 13a-1, and 13a-13 Promulgated Thereunder
AIDING AND ABETTING COMPANY'S FALSE SEC FILINGS**

7.      Did James E. Koenig aid and abet one or more violations by Waste Management, Inc. of
        Section 13(a) of the Securities Exchange Act of 1934 and Rules 12b-20, 13a-1, and 13a-
        13 promulgated thereunder?


        Yes:_____      No:_____



        If your answer to Question 7 is "Yes," please indicate below the period or periods in
        which James E. Koenig aided and abetted Waste Management's violation of Section
        13(a) and Rules 12b-20, 13a-1, and 13a-13 by marking "yes" next to those periods, or
        "no" next to the period or periods in which there was no aiding and abetting of a
        violation.  Otherwise, please proceed to Question 8 on the next page.



        (a) 1992                            Yes:_____    No:_____
        (b) 1993                            Yes:_____    No:_____
        (c) 1994                            Yes:_____    No:_____
        (d) 1995                            Yes:_____    No:_____
        (e) 1996                            Yes:_____    No:_____


7

### H. Aiding and Abetting Section 13(b)(2)(A) of the Exchange Act of 1934
### AIDING AND ABETTING COMPANY'S FALSIFICATION OF BOOKS AND RECORDS

8.    Did James E. Koenig aid and abet one or more violations by Waste Management, Inc. of Section 13(b)(2)(A) of the Securities Exchange Act of 1934?

Yes:_____         No:_____

If your answer to Question 8 is "Yes," please indicate below the period or periods in which James E. Koenig aided and abetted Waste Management's violation of Section 13(b)(2)(A) by marking "yes" next to those periods, or "no" next to the period or periods in which there was no aiding and abetting of a violation.  Otherwise, please proceed to Question 9 on the next page.

| | | |
|---|---|---|
| (a) 1992 - Annual | Yes:_____ | No:_____ |
| (b) 1993 - Annual | Yes:_____ | No:_____ |
| (c) 1994 - Annual | Yes:_____ | No:_____ |
| (d) 1995 - Second Quarter | Yes:_____ | No:_____ |
| (e) 1995 - Third Quarter | Yes:_____ | No:_____ |
| (f) 1995 - Annual | Yes:_____ | No:_____ |
| (g) 1996 - First Quarter | Yes:_____ | No:_____ |
| (h) 1996 - Second Quarter | Yes:_____ | No:_____ |
| (i) 1996 - Third Quarter | Yes:_____ | No:_____ |
| (j) 1996 - Annual | Yes:_____ | No:_____ |

8

## I. Rule 13b2-1 of the Securities Exchange Act of 1934
## FALSIFYING BOOKS AND RECORDS

9. Did James E. Koenig violate Rule 13b2-1 promulgated under the Securities Exchange
Act of 1934?

**Yes:**_____    **No:**_____

If your answer to Question 9 is "Yes," please indicate below the period or periods in
which James E. Koenig violated Rule 13b2-1 by marking "yes" next to those periods, or
"no" next to the period or periods in which there was not a violation. Otherwise, please
proceed to Question 10 on the next page.

| | | |
|---|---|---|
| (a) 1992 - Annual | **Yes:**_____ | **No:**_____ |
| (b) 1993 - Annual | **Yes:**_____ | **No:**_____ |
| (c) 1994 - Annual | **Yes:**_____ | **No:**_____ |
| (d) 1995 - Second Quarter | **Yes:**_____ | **No:**_____ |
| (e) 1995 - Third Quarter | **Yes:**_____ | **No:**_____ |
| (f) 1995 - Annual | **Yes:**_____ | **No:**_____ |
| (g) 1996 - First Quarter | **Yes:**_____ | **No:**_____ |
| (h) 1996 - Second Quarter | **Yes:**_____ | **No:**_____ |
| (i) 1996 - Third Quarter | **Yes:**_____ | **No:**_____ |
| (j) 1996 - Annual | **Yes:**_____ | **No:**_____ |

9

## J. Rule 13b2-2 of the Securities Exchange Act of 1934
## LYING TO AUDITORS

10. Did James E. Koenig violate Rule 13b2-2 promulgated under the Securities Exchange
Act of 1934?

Yes:_____          No:_____

If your answer to Question 10 is "Yes," please indicate below the period or periods in
which James E. Koenig violated Rule 13b2-2 by marking "yes" next to those periods, or
"no" next to the period or periods in which there was not a violation.

| | | |
|---|---|---|
| (a) 1992 | Yes:_____ | No:_____ |
| (b) 1993 | Yes:_____ | No:_____ |
| (c) 1994 | Yes:_____ | No:_____ |
| (d) 1995 | Yes:_____ | No:_____ |
| (e) 1996 | Yes:_____ | No:_____ |

The jury reached the above answers unanimously.

Signed:

_____          _____
Foreperson

_____          _____

_____          _____

_____          _____

_____          _____

Dated: _____

11

## CERTIFICATE OF SERVICE

I, Sarah R. Wolff, state that on June 29, 2006, I electronically filed the foregoing **JURY INSTRUCTIONS AND VERDICT FORM SUBMITTED TO THE JURY** with the Clerk of the Court using the ECF system which will send notification of such filings to the following:

John D. Worland, Jr., Esq.
Securities and Exchange Commission
450 Fifth Street, N.W.
Mail Stop 9-11
Washington, DC 20549-0808
worlandj@sec.gov

**Counsel for Plaintiff**

John E. Birkenheier, Esq.
United States Securities and Exchange
Commission
175 W. Jackson Boulevard
Suite 900
Chicago, IL 60604
birkenheierg@sec.gov

**Counsel for Plaintiff**

s/Sarah R. Wolff

Sarah R. Wolff  (Bar No. 3123733)
Jonathan S. Quinn (Bar No. 6200495)
Matthew J. O'Hara (Bar No.6237795)
Christopher R. Clark (Bar No. 6236859)
SACHNOFF & WEAVER, LTD.
10 South Wacker Drive
Chicago, IL  60606
(312) 207-1000
swolff@sachnoff.com

*Attorneys for Defendant James E. Koenig*