IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 02 C 2180 |
| v. | ) ) | Wayne R. Andersen |
| JAMES E. KOENIG, | ) ) | District Judge |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is defendant James E. Koenig's motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b), and his motion in the alternative for a new trial, pursuant to Fed. R. Civ. P. 59(a). For the following reasons, defendant's motions are denied.

Before explaining why defendant's motions are denied, the court would like to express its thanks to the attorneys for the SEC and Mr. Koenig, and to Mr. Koenig himself, for the professionalism, diligence, intelligence and even occasional good cheer in the conduct of this twelve week trial. The issues are complex and often tedious, but the court was blessed with testimony from preeminent, articulate witnesses presented by both sides. The jury remained uniquely attentive and engaged throughout the trial.

## BACKGROUND

On March 26, 2002, the Securities and Exchange Commission ("SEC") instituted a civil action against James Koenig and certain other officers of Waste Management, Inc. ("Waste

Management"). The complaint alleged that, while Koenig was Waste Management's chief financial officer, he falsified reports disclosing Waste Management's earnings and other measures of financial performance. The SEC further claimed that Koenig caused Waste Management improperly to eliminate or defer current period expenses in order to inflate earnings, including operating earnings, and use one-time gains realized on the sale or exchange of assets to eliminate unrelated current period operating expenses. When Waste Management's financial statements were restated in February, 1998, and Waste Management admitted it had overstated after-tax net income by more than $1 billion, it was the largest overstatement in history. The SEC asserted that the acts leading to the restatement violated section 17(a) of the Securities Act of 1933 ("Securities Act"), sections 10(b) and 13(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as well as Exchange Act rules 10b-5, 12b-20, 13a-1 and 13a-13. All of the original co-defendants settled with the SEC.

The case against Koenig proceeded to trial on April 18, 2006, and a jury returned a verdict on June 29, 2006, finding Koenig liable on all counts, specifically: (1) securities fraud pursuant to section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; (2) securities fraud pursuant to section 17(a)(1) of the Securities Act; (3) securities fraud pursuant to section 17(a)(2) of the Securities Act; (4) securities fraud pursuant to section 17(a)(3) of the Securities Act; (5) aiding and abetting company's securities fraud pursuant to section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; (6) aiding and abetting company's securities fraud pursuant to section 17(a) of the Securities Act; (7) aiding and abetting company's securities fraud pursuant to section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 3a-13 promulgated thereunder; (8) aiding and abetting company's falsification of books and records

pursuant to section 13(b)(2)(A) of the Exchange Act; (9) falsifying books and records pursuant to Rule 13b2-1 of the Exchange Act; and (10) lying to auditors pursuant to Rule 13b2-2 of the Exchange Act. Koenig was found liable on each of counts (1) through (7) and count (10) for each of the years between 1992 and 1996, inclusive. Koenig was found liable to counts (8) and (9) for each of the years 1992, 1993, 1995, and 1996, and additionally for the second and third quarters of 1995, as well as the first, second, and third quarters of 1996. Koenig prevailed on none of the counts and none of the specific time periods named in the SEC's complaint.

Koenig moved three times for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure: first at the close of the SEC's case in chief on June 5, 2006, again before the close of evidence on June 23, 2006, and additionally on June 26, 2006. The court denied each of Koenig's motions. The court now addresses Koenig's renewed motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, and his motion in the alternative for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.

## DISCUSSION

A court may grant judgment as a matter of law only when there is no "legally sufficient evidentiary basis for a reasonable jury to find for" the nonmoving party. FED. R. CIV. P. 50(a). When entertaining a motion for judgment as a matter of law, we review all of the evidence in the record, and draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). We may not weigh the evidence or make credibility determinations, nor may we substitute our view of the contested evidence for the

jury's. *Id.* See also *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004). There must be, however, more than a "mere scintilla of evidence" to support the movant's case. *Id.* See *Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001).

In support of his Rule 50(b) motion, Koenig claims that no reasonable jury could find that: (i) the alleged misrepresentations and omissions were material; (ii) Koenig acted with the requisite state of mind; (iii) Koenig aided and abetted a primary violation committed by Waste Management; and (iv) Koenig lied to the company's auditors. We examine each in turn.

A. Rule 50(b) Motion for Judgment as a Matter of Law

*1. Material Misrepresentations and Omissions*

Koenig was found liable for violating Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder. Section 10(b) of the Exchange Act provides:

> It shall be unlawful for any person . . . (b) (t)o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

To establish a violation of Section 17(a)(1) or Section 10(b) and Rule 10b-5 thereunder, the plaintiff must prove that: (1) the defendant made an untrue statement of material fact or omitted a fact that rendered a statement made by the defendant misleading; (2) such misrepresentation or omission was made in connection with the purchase or sale of securities; and (3) was done with the intent to mislead (scienter). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976). Scienter is not required for violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act. *Aaron v. SEC*, 446 U.S. 680 (1980).

Koenig argues that, contrary to the jury's finding of materiality, any misrepresentations and omissions which led to the February, 1998 restatement were not material. The test for materiality in the § 10(b) and Rule 10b-5 context was laid out in *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). Adopting the standard from *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976), the Supreme Court held that "to fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

Koenig's main argument is that the court should have applied the "move the market" test. He claims that the evidence at trial demonstrated that Waste Management's stock price increased after the disclosure of the misstatements and omissions, and that such misstatements and omissions were therefore immaterial. His expert, Kenneth McGraw, opined that, because Waste Management's February 24, 1988 disclosure of accounting improprieties led to a 5.3% increase in common stock value on February 25, 1988, the disclosure of the accounting misstatements and omissions could not have been material to investors. Trial Tr. 5636.

5

The SEC raises four arguments in its opposition to Koenig's motion: (1) contrary to Koenig's assertions, Waste Management's stock did move, declining by approximately $1.45 billion in response to the February, 1988 disclosure; (2) Professor Henry Jaenicke and Edward Weinstein, two of the SEC's accounting experts, presented substantial evidence of generally accepted accounting principles ("GAAP") violations, which are presumptively material misstatements; (3) Nell Minow, whose firm LENS was a major shareholder in Waste Management, testified that earnings per share were an important consideration in deciding whether to invest in Waste Management; and (4) Herbert Getz, Waste Management's former legal counsel, testified as to the percentage of income the legal department believed to be material.

While Koenig argues that no reasonable jury could have found that the materiality requirement was met because Waste Management's stock price increased after the restatement, his own expert, Dr. Frederick Dunbar, testified that the cumulative market value impact of the October, 1997 departure of Ronald LeMay, Waste Management's CEO, and the February, 1998 restatement on Waste Management was approximately $1.45 billion. We find that reliance on Koenig's expert's testimony that a $1.45 billion restatement is material is ample justification for the jury's verdict that the misstatements and omissions were material.

The jury also heard substantial evidence of GAAP violations. A GAAP violation is presumptively a false or misleading statement of material fact under Rule 10b-5. *SEC v. Systems Software Assocs., Inc.*, 145 F. Supp. 2d 954, 958 (N.D. Ill. 2001). Professor Jaenicke testified that the correct response to a material accounting error is a restatement of the financial report based upon a correction of the error. He specifically looked at issues of depreciation, capitalized

interest, basketing and bundling, and acquisition accounting, and opined that each of those issues should have been restated because they were material. He concluded that the amount of the February, 1998 restatement, more than one billion dollars, was material. We find that the jury was reasonable in finding a greater than one billion dollar restatement to be material because it significantly altered the total mix of information made available to investors.

The jury's verdict was reasonable because Nell Minow, whose firm LENS was a significant Waste Management shareholder, testified that when her company was deciding whether to invest in Waste Management, analysts examined Waste Management's assets, cashflow, and earnings per share, all of which were contained within Waste Management's financial statements. Minow testified that Waste Management's financial statements were a "crucial, even dispositive factor in making her investment decision," and that she was "astonished" by the size of the February, 1998 restatement, which she described as "record breaking." When asked if her company's proposals to invest in Waste Management would have been different if she had had the financial statements available after the restatement, she said:

> It's always difficult to answer a hypothetical question. Certainly, they would have been different. Whether we would have been in a position of even making the proposals in the first place I think is something that I couldn't even begin to answer right now because our estimation of the company's investment worthiness would have been so profoundly different.

Trial Tr. 3315. Reliance on her testimony in determining that the misrepresentations and omissions were material is reasonable.

Another of Koenig's witnesses, Kenneth W. McGraw, testified that USA Waste, Waste Management's most experienced and sophisticated investor, reduced the exchange rate for which it was acquiring Waste Management by 10% immediately after the restatement was announced.

7

The reduced exchange rate had the effect of lowering the sale value to Waste Management's shareholders by more than $3 billion, an amount reasonable to be material.

The SEC's last argument that the jury was reasonable in finding materiality is that Koenig's friend and Waste Management's former general counsel, Herbert Getz, testified that the legal department believed that matters over 10% of income were material enough to disclose and that matters between 5-10% of income were material enough to discuss disclosure. The matters in this case exceeded 10% of income, and therefore were material by Waste Management's legal department's own internal standards.

We conclude that the jury had an abundance of evidence from which to conclude that there were material misrepresentations and omissions.

*2. State of Mind*

Koenig next argues that no reasonable jury could find that he acted with the requisite state of mind. Scienter is a mental state embracing intent to deceive, manipulate, or defraud. *Ernst,* 425 U.S. at 193. Only persons who act with an intent to deceive or manipulate violate Rule 10b-5. *Id.* In the Seventh Circuit, reckless disregard of the truth establishes the element of intent for this purpose. *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1044-45 (7th Cir. 1977). Deliberate ignorance, as well, can stand in for actual knowledge. *SEC v. Jakubowski*, 150 F.3d 675, 681-82 (7th Cir. 1998).

Koenig claims that, even though he signed Waste Management's representation letters to the SEC for the years 1992 through 1996, no evidence was presented that he intended the representations to be false or misleading or that he was reckless in making the representations.

8

Evidence included a document known as the Summary of Action Steps ("Action Steps"), which described "virtually every accounting violation in the case, and what needed to be done immediately to correct them." The Action Steps were created by the Arthur Andersen audit team, and signed by Koenig as Waste Management's CFO, as well as Waste Management's chief accounting officer, and Arthur Andersen's audit partner. It included a "must do" column, which represented steps Waste Management needed to complete in order to bring the company to a "minimum acceptable level of accounting." At trial the SEC's expert, Edward Weinstein, described the document as "extraordinary."

> Now, the only time that I have ever seen these kinds of signatures on a document is on the engagement letter that an auditor receives from the client signed by the chief financial officer and then signed by the audit partner. These kinds of signatures sometimes appear on different other documents, but not together. So this is quite extraordinary that they all appear together.

Trial Tr. 3807. The Action Steps listed accounting issues including basketing and bundling, deferred project costs, landfill capitalized interest, and depreciation/salvage value adjustments, all subjects of the eventual accounting misrepresentations which led to the February, 1998 restatement. We find reasonable the jury's conclusion that Koenig had the requisite intent for liability because he had full knowledge of the recommendations contained in the Action Steps, and he made accounting decisions for Waste Management despite those recommendations.

The SEC presented a multitude of other evidence upon which the jury could have reasonably based its finding of liability. For example, the SEC's evidence included a 1992 letter from Arthur Andersen, which recommended that Waste Management perform a study to evaluate the "proper level of WMI's salvage values and useful lives." The SEC demonstrated that Waste Management did not attempt to do this evaluation until the restatement six years later, when a

$509 million reduction in depreciation amounts was listed for the period of 1992-1996. Additionally, a 1993 letter from Arthur Andersen criticized Waste Management's method of booking CERCLA environmental reserves in acquisitions; when corrected in the restatement five years later, the reduction in profits was $128 million for the period of 1992-1996. Additionally, Waste Management's method of capitalizing interest on landfill construction did not comply with GAAP, another issue brought to Waste Management's attention in 1992 by Arthur Andersen.

One of the most powerful pieces of evidence presented by the SEC to demonstrate scienter on the part of Koenig was the testimony of Professor Thomas Frecka. Frecka testified that Waste Management hired him to evaluate its "basketing and bundling" process, wherein unamortized costs from failed landfill sites were transferred to operating landfill sites to avoid taking the costs as an immediate expense, as GAAP would normally require. Frecka testified that he wrote a memo to Waste Management, describing basketing and bundling as unacceptable under GAAP. He then wrote another memo, shifting his argument in Waste Management's favor, but making clear the process was not compliant with GAAP. Waste Management never informed the SEC of the content of the two memos, as Arthur Andersen recommended. Koenig testified he relied on a later audit manager's incorrect memo about GAAP requirements. The evidence presented by the SEC plainly showed scienter on Koenig's part in rejecting the advice of experts hired by Waste Management whose conclusions conflicted with Waste Management's financial goals and practices. We find the jury's reliance on this evidence also to be reasonable.

Overall, the preponderance of the evidence presented at trial demonstrated Koenig's scienter for his material misrepresentations and omissions regarding Waste Management finances from 1992 to 1996, and the jury's conclusion in that regard was reasonable.

*3. Aiding and Abetting*

Koenig argues that he cannot be found liable both for violating securities laws as the CFO of Waste Management and for aiding and abetting Waste Management in violating securities laws. First Koenig argues that there is no evidence in the record from which a reasonable jury could conclude that he acted with the requisite scienter to commit the primary violation on Waste Management's behalf. His first argument fails because, as explained above, the jury's finding of scienter was reasonable.

Second, Koenig argues that under *U.S. v. Doig*, 950 F.2d 411 (7th Cir. 1991), an OSHA case, it is "logically inconsistent" to find an agent's actions both as proof of a company's primary violations and as proof of the agent's aiding and abetting violations. For the following reasons, his second argument also fails.

In *Doig*, when a company was charged with a primary violation under OSHA for the death of an employee, and a manager was charged with aiding and abetting the primary violation, the Seventh Circuit held that the statutory framework of OSHA did not permit an employee to be held responsible as an aider and abettor of an employer's violation. The court was clear that, had the employee been a director of the company, he could also have been an employer; then the aiding and abetting charge would have been proper. *Doig*, 950 F.2d at 415, n.5. The court further found employee liability to be inconsistent with the statutory scheme of OSHA.

Koenig's reliance on *Doig,* however, is not persuasive because, although OSHA was silent on employee liability for aiding and abetting a primary violation, Congress was clear that aiders and abettors may be held liable for violations of the federal securities laws. See *SEC v. Buntrock*, 2004 WL 1179423, at *7-8 (N.D. Ill. May 25, 2004).

11

More fundamentally, the crux of Koenig's argument is that of "double-counting." He claims that, because a corporation cannot act on its own but only through a natural person, and he was the sole defendant on trial, he cannot be responsible for both the primary violation and the aiding and abetting violation. Koenig is incorrect both factually and legally.

The record at trial is replete with evidence of misconduct involving Waste Management employees other than Koenig. Others were involved with Koenig in many of the issues in this case, including capitalized interest, depreciation adjustments, geography entries, bundling and basketing, and financial and disclosure matters. Additionally, the evidence demonstrated that Koenig was not alone in his awareness that the accounting was out of step with GAAP. On this level alone, Koenig's arguments against the verdicts of aiding and abetting fail. Koenig's legal arguments also fail. One may aid and abet a corporate entity even if, unlike here, there was evidence of misconduct by only one agent. See *U.S. v. Sain*, 141 F.3d 463 (3d Cir. 1998); *SEC v. Cohen*, No. 4:05 CV 371, 2006 WL 2225410, at *4 (E.D. Mo. Aug. 2, 2006). While a corporation as an independent legal entity exists outside of the actions of its directors, it can act only through the actions of natural persons. To hold that Koenig cannot have acted to aid and abet Waste Management's violations as well as being primary liable for Waste Management's violations is contrary to the intent of the securities laws and to our reasoning.

The court rejects Koenig's claim that there is no reasonable basis for the verdict against him.

*4. Lying to Auditors*

Koenig claims there was an absence of evidence sufficient for a reasonable jury to find that he made or caused someone else to make material misleading statements or omissions to Waste Management's auditors, and therefore he cannot be liable for the Rule 13b2-2 claims. The trial record has a multitude of evidence supporting the jury's finding that Koenig lied to auditors. For example, as the signatory for representation letters to the auditors from 1992 through 1996, Koenig represented that he was "responsible for the financial position, results of operations and cash flows in accordance with" GAAP. The SEC points to misrepresentations in memos to auditors regarding support for the salvage values of trucks and geography entries, and false statements or omissions to the auditors regarding self-insurance reserves, capitalized interest, and environmental remediation reserves. We find the jury's reliance on this evidence in its finding of liability for lying to auditors to be reasonable, and reject Koenig's claim.

For the foregoing reason, Koenig's Rule 50(b) motion for judgment as a matter of law is denied.

B. Rule 50(a) Motion for a New Trial

Courts have interpreted Rule 59(a) to mean that a judge may order a new trial in the judge's discretion if such an order is necessary to effect "substantial justice." *Cefalu v. Village of Elk Grove*, 1998 WL 325191 at *1 (N.D. Ill. June 9, 1998). A new trial may be granted if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." See *Mid-America Tablewares, Inc. v. Mogi Trading*

*Co.*, 100 F.3d 1353, 1367 (7th Cir.1996). A Rule 59(a) motion, however, is not a vehicle for parties to relitigate issues, but a "device properly used to correct manifest errors of law or fact or to present newly discovered evidence." *Rosera v. Int'l Harvester Co.*, 109 F.R.D. 143, 148-149 (E.D. Wisc.1986).

In support of his Rule 59(a) alternative motion, Koenig claims that: (i) no reasonable basis existed to support the verdict; and (ii) erroneous jury instructions and verdict forms caused the jury to reach unsupported conclusions.

*1. Basis to Support the Verdict*

Koenig claims that failure to set the verdict aside would promote an injustice. He argues that the evidence demonstrated that the misrepresentations and omissions were not material. He argues that the evidence demonstrated that he did not act with the requisite scienter to have committed a securities law violation. As we explained above, however, Koenig's claims that no reasonable basis existed to support the verdict fail. We find the jury was reasonable in its conclusion based on the evidence presented at trial that (i) Koenig's misrepresentations and omissions were material, and (ii) Koenig acted with the requisite scienter to have committed the securities law violations for which he was found liable. Therefore, his first claim for a new trial fails.

14

*2. Erroneous Jury Instructions and Verdict Forms*

Koenig claims that the court improperly instructed the jury that a claim for aiding and abetting is satisfied through reckless conduct. He argues that the proper standard is actual knowledge, based on his reading of Section 20(e) of the Exchange Act:

> For purposes of any action brought by the Commission under paragraph (1) or (3) of section 21(d) [15 USCS § 78u(d)(1) or (3)], any person that knowingly provides substantial assistance to another person in violation of a provision of this title, or of any rule or regulation issued under this title, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

15 U.S.C. § 78t(e). At trial, this court instructed the jury that, in order for the SEC to prove its claims of aiding and abetting, the SEC must establish that Koenig "knew, or was reckless in not knowing of Waste Management's violation and of his role in furthering the violation."

Section 20(e) of the Private Securities Litigation Reform Act of 1995, which authorizes the SEC to bring claims for aiding and abetting primary securities law violations, was enacted in response to the Supreme Court's decision in *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994). Congress amended the Exchange Act by adopting Section 20(e) to ensure that courts would not extend *Central Bank* to eliminate the SEC's power to enjoin aiding and abetting violations. In drafting Section 20(e), Congress explicitly based the SEC's power to sue for aiding and abetting on the SEC's pre-existing and complementary power to sue for primary securities violations.

Koenig argues that the law requires actual knowledge of Waste Management's violations in order for him to be found liable. He first cites to a Seventh Circuit case, *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 955-56 (7th Cir. 2004), which does not come to a conclusion on the

15

intent question ("... the SEC contends and several courts have held, the awareness requirement can be satisfied by a finding of recklessness... see, e.g., *Geman v. SEC*, 334 F.3d 1183, 1195 (10th Cir. 2003); *Graham v. SEC*, 222 F.3d 994, 1004 (D.C. Cir. 2000)...") He also cites to a Ninth Circuit Case, *SEC v. Fehn*, 97 F.3d 1276, 1288 n.11 (9th Cir. 1996), which first acknowledges that "other decisions by this Court have defined this element as "actual knowledge or reckless disregard," *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991)," but then does not address the discrepancy "because Section 104, by its plain terms, requires 'know[ledge]' as an element of aiding and abetting." While *Levine* is complex and lengthy, the discussion of scienter is addressed only in a single sentence in a footnote. After reading these cases, we are most persuaded by thoughtful decisions in the Courts of Appeals for the District of Columbia Circuit and the Southern District of New York, which have consistently held knowledge or recklessness sufficient to impose aiding and abetting liability. See *Graham v. SEC*, 222 F.3d 994, 1004 (D.C. Cir. 2000); *SEC v. Penthouse Int'l, Inc.*, 390 F. Supp. 2d 344, 355 (S.D.N.Y. 2005).

Moreover, in our mind, the issue of scienter was essentially rendered moot when we reviewed the thousands of pages of transcripts from the trial and observed that there was barely a need for the jury to find recklessness because the SEC established by a preponderance of the evidence that Koenig acted with actual knowledge of the fraudulent statements concerning the financial health of Waste Management.

Therefore, Koenig's alternative Rule 59 motion for a new trial is denied.

## CONCLUSION

For the foregoing reasons, Koenig's motion [450] for judgment as a matter of law, or in the alternative for a new trial, as to Sections 10(b) and 13(a) of the Exchange Act, Section 17(a) of the Securities Act, and SEC Rules 10b-5, 12b-20, 13a-1, 13a-13, and 13b2-2 is denied.

It is so ordered.

/s/ Wayne R. Andersen
Wayne R. Andersen
District Judge

Dated: April 5, 2007