IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| | ) | No. 02 C 2180 |
| Plaintiff, | ) ) | Wayne R. Andersen |
| v. | ) ) | District Judge |
| JAMES E. KOENIG, | ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a limited remand from the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"). *See SEC v. Koenig*, 557 F.3d 736 (7th Cir. 2009). For the following reasons, defendant James E. Koenig's ("Koenig") motion to modify the judgment to comport with the Seventh Circuit's opinion and order [518] is denied.

*I. BACKGROUND*

This case involves securities law violations dating back to 1992 and a final resolution is near. On March 26, 2002, the Securities and Exchange Commission ("SEC") filed a civil action against Koenig and five other officers of Waste Management, Inc. ("Waste Management"). All of Koenig's co-defendants settled with the SEC. Koenig proceeded to a jury trial on liability in 2006. The jury found that, as Chief Financial Officer ("CFO") of Waste Management, Koenig committed sixty securities law violations between 1992 and 1996. On appeal, Koenig conceded that the trial evidence was sufficient to support that verdict.

After the verdict, the Court conducted a two-day hearing on November 14 and 16, 2007 to determine the appropriate remedies. After considering testimony from both parties' financial experts and reviewing other evidence, the Court imposed a civil penalty of approximately $2.1

million and ordered Koenig to disgorge the bonuses he received from Waste Management for 1992, 1994, and 1995, plus prejudgment interest. Those bonuses totaled $831,500 ($161,500 for 1992; $250,000 for 1994; and $420,000 for 1995). All parties agreed that Koenig did not receive – and was not entitled to – a bonus in 1993, and the SEC did not seek disgorgement of Koenig's 1996 bonus. This Court ordered disgorgement of more than $2 million ($831,500 plus more than $1.2 million in prejudgment interest). We also enjoined Koenig from, among other things, future service as a director or top manager of a public company.

## II. REMAND ANALYSIS

According to the Seventh Circuit, Koenig raised six principal arguments on appeal. The Seventh Circuit affirmed this Court's judgment as to all of those issues except for a finding that "[t]he district judge did not explain why Koenig's proper bonus for 1992 nonetheless should be set at zero." *Koenig*, 557 F.3d at 746. The Seventh Circuit took issue with our perceived failure to discuss how the methodology of the SEC's accounting expert, Roman Weil ("Weil"), applied to Koenig's 1992 bonus. After carefully reviewing the Seventh Circuit's opinion and the parties' briefs on remand, we find that our original disgorgement figure of $831,500 plus more than $1.2 million in prejudgment interest was correct and supported by the evidence in the record. Per the Seventh Circuit's request, we expound on the bases for that conclusion below. To the extent necessary, we also address other issues raised in the parties' remand briefs.

### A. Weil vs. Dunbar

During the remedies hearing, Koenig and the SEC presented reports and testimony from competing financial experts. Koenig's expert was Frederick C. Dunbar ("Dunbar") and the SEC's expert was Weil. We were not – and still are not – persuaded by Dunbar's testimony, or

2

expert report.

As stated above, the relevant time period in this case was 1992-1996. During those five years, Koenig committed sixty securities law violations. As a result of those violations, in 1998, Waste Management restated its financial results for 1992 through the first three quarters of 1997. Waste Management did not restate its financial results for the years prior to 1992. Instead, Waste Management chose to "write-down" $198.6 million in earnings for errors in its financial reporting prior to 1992. There are no findings of violations in the record regarding Waste Management's financial results prior to 1992. Based on Waste Management's restated financial results for 1992 through the first three quarters of 1997, Weil and Dunbar calculated and opined on what they believed Waste Management's earnings per share ("EPS") would have been in 1992-1996 "but-for" Koenig's securities law violations. Both experts also opined on what that believed Koenig's bonuses should have been for 1992-1996 in that "but-for" world. Only Dunbar opined about what Waste Management's 1991 EPS would have been but for in his "but-for" world.

Dunbar's most troubling conclusion was that, despite Koenig's five years of unlawful conduct resulting in at least $1.45 billion in shareholder loss, Koenig's 1994 bonus should have been $500,000 – double the $250,000 he actually received. That conclusion is illogical to us and reinforced our decision not to rely on Dunbar's methodology or findings. We also found Dunbar's $1.46 estimated EPS figure for 1991 unreliable and speculative. In its opinion, the Seventh Circuit mistakenly attributed that figure to Weil. The $1.46 figure was not supported by the facts in the record. 1991 was outside the relevant time period in this case and there was no evidence of securities violations related to Waste Management's 1991 EPS figure. Dunbar's

3

decision to and method for "adjusting" the 1991 ESP figure based on an assumption that the 1991 EPS was overstated is speculative at best.

   *B. Weil's Methodology*

As the Seventh Circuit found, Weil's methods and conclusions were reliable. *See Koenig*, 557 F.3d at 745. Weil adopted a simple, straightforward, and logical method for determining Koenig's 1992-1996 bonuses in a "but for" world. For each of the years in question, 1992-1996, Waste Management's Compensation Committee ("Compensation Committee") utilized a formula for calculating bonuses for Waste Management executives, including Koenig. The formula was:

**Bonus = [Award as a % of Target] x [Employee's Target Award] x [Employee's Salary]**

The "employee's target award" figure was a preset percentage of the employee's salary that the Compensation Committee set as a target bonus. For example, if that number was 50%, which it was for Koenig in 1994, and Koenig's salary that year was $500,000, then Koenig's target bonus was $250,000. The "award as a % of target" figure was less precise. That figure had two components and represented Waste Management's targeted EPS growth rate from year to year. Each year, the Compensation Committee considered a number of factors in determining a targeted EPS figure. To determine the "% of target" growth, the Compensation Committee compared its targeted figure to Waste Management's actual (pre-restatement) EPS Figure. If the actual EPS figure equaled the targeted EPS figure, the "award as a % of target" was 100% and the executives would be entitled to their entire target bonus. In our 1994 example, if actual EPS equaled target EPS, Koenig would have been entitled to a $250,000 bonus (1 x .5 x $500,000 = $250,000).

In Weil's "but-for" analysis he did not adjust the Compensation Committee's targeted EPS figures. He only corrected the actual EPS figures, based on Waste Management's restated financial for 1992-1996. That decision was logical. To adjust the targeted EPS figures downward would have rewarded Koenig for his unlawful conduct. Additionally, there was no mathematically sound method for adjusting the targeted EPS figures. According to the Compensation Committee's minutes from its board meeting on December 18, 1992, it considered a number of different factors in choosing a target EPS and it often tweaked its target EPS to reach a desired "award as a % of target" figure.

The Compensation Committee's method for calculating an "award of a % of target," like this Court's disgorgement calculation was not an exact science. *See SEC v. Koenig*, No. 02 C 2180 at 10 (Dec.3, 2007) ("The disgorgement figure calculation is discretionary and need not be exact." (citing *SEC v. First Jersey Sec. Corp.*, 101 F.3d 1450, 1474-75 (2d. Cir. 1996))). In its discretion, the Compensation Committee attempted to fashion bonuses for 1992, and the other relevant years, that would appropriately "charge the Company's management for matters within their responsibility and [avoid] penalizing management for matters wholly beyond their control." *12/18/92 Meeting Minutes* at 6. With that goal in mind, the Compensation Committee made the following adjustments to its 1992 target EPS; it added "$.37 per share, reflecting a special charge for 1991 for which the Committee believes the Company's management should be held accountable . . . [plus they increased the 1992 EPS figure by] $.14 per share, representing charges for certain accounting rule changes . . . management should not be held responsible for." The Committee then deemed the 1992 EPS figure "decreased by such amount as is necessary . . . to equal 100% of the "target bonus." *12/19/92 Meeting Minutes* at 6. In other words, the

5

Compensation Committee believed that Koenig and the other executives had competently performed their jobs in 1992 and that Waste Management's EPS had grown at an acceptable rate and therefore wanted to reward management with 100% of their target bonuses.

Based on the Compensation Committee's desire to "charge the Company's management for matters within their responsibility," the logical conclusion is that, if it had known that Koenig was falsifying financial statements, resulting in inflated EPS figures and lower earnings growth, the Compensation Committee would not have awarded him a bonus in 1992, 1994, or 1995. It is also logical, as Weil stated, not to adjust the target EPS figures and only to adjust the actual EPS figures based on the restated financials. Any other method would not adequately deprive Koenig of his ill-gotten gains, which is the purpose of disgorgement. *See SEC v. Lipton*, 278 F.3d 656, 664 (7th Cir. 2002). Those factual findings were the primary bases for our decision to order Koenig to disgorge all of the $161,500 bonus for 1992.

    *C. 1993-1996 Bonuses*

Per the Seventh Circuit's instructions, we also reviewed our conclusions regarding Koenig's bonuses for 1993-1996. There is no dispute over Koenig's 1993 and 1996 bonuses. Koenig did not receive a bonus in 1993 and the SEC did not seek disgorgement of Koenig's 1996 bonus. Accordingly, those two years did not factor into our disgorgement analysis. As for 1995, we agree with both experts that if Koenig had adhered to the applicable securities laws, he would not have received a bonus in 1995. Therefore, he should be ordered to disgorge his entire $420,000 bonus for that year because that money is ill gotten gains from his violations. We also reaffirm our finding that Koenig should disgorge his entire 1994 bonus of $250,000.

As we stated in our prior opinion, 1993 was a down year for Waste Management. Even

with Koenig's fraudulent reporting, Waste Management's EPS fell almost 18 percent. Under Dunbar's analysis, without Koenig's violations, Waste Management's EPS in 1993 would have decreased 28 percent. [Weil's analysis provided a similar decrease in EPS]. In light of such poor performance in 1993, the Court is not persuaded that Koenig would have retained his job in 1994, much less received a $500,000 bonus. As stated above, Koenig's unlawful conduct caused at least $1.45 billion in shareholder loss, so it is unlikely the Compensation Committee would have rewarded Koenig any bonus for 1994. Koenig's bonuses in 1992, 1994, and 1995 are the direct result of his securities law violations. They constitute ill-gotten gains and must be disgorged.

### III. OTHER ISSUES RAISED ON REMAND

On remand, the SEC seeks to extend the calculation of pre-judgment interest though the entry of this order in November 2009. The line of demarcation between when pre-judgment interest ends and post-judgment interest begins to accrue is the date that damages have been ascertained in a meaningful way. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 836 (1990). Our December 20, 2007 order, which the Seventh Circuit affirmed, ascertained damages in a meaningful way and post-judgment interest began accruing thereafter. On that date, we ordered Koenig to pay disgorgement, pre-judgment interest, and civil penalties. The Seventh Circuit's request that we further explain our disgorgement calculation was not a reversal of our prior remedies award and did not extend the application of pre-judgment interest. Accordingly, the Court affirms its original pre-judgment interest award of $1,246,517.

On remand, Koenig asks the Court to reconsider the civil penalty it imposed based on what he claims is his diminished financial condition. For a number of reason the Court denies

Koenig's request. Any claim of financial hardship is waived because it was not raised on appeal and is outside the scope of the limited remand. *See United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002); *Avello v. SEC*, 454 F.3d 619, 627 (7th Cir. 2006). More importantly, the Court does not find that Koenig's financial condition prevents him from satisfying a seven figure civil penalty. Instead, Koenig appears able to satisfy – in full or in part – the outstanding judgment.

Finally, by agreement of the parties, Koenig is ordered to pay post-judgment interest of 3.2%, compounded annually. As stated above, post-judgment interest began accruing on December 21, 2007.

## IV. CONCLUSION

For the reasons set forth above, on remand, the Court reaffirms its prior order. Koenig is ordered to disgorge $831,500, plus $1,246,517 in prejudgment interest. Koenig is further order to pay a civil penalty in the amount of $2,078,017 and post-judgment interest of 3.2%, compounded annually. Post-judgment interest began to accrue on December 21, 2007. All other conditions of this Court's final judgment order still apply.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: November 23, 2009